ALFRED MAYBERRY & ux. *versus* INHAB'TS OF STANDISH.

The existence of highways may be established by proof of location, prescription, or dedication and acceptance.

Long continued, uninterrupted public use of a way, is a proper element of proof to establish the existence of a highway in either of these modes.

The presumption arising from such evidence, that there has been a legal location at some forgotten period in the past, is one of fact and liable to be rebutted.

When such evidence is offered in proof of a highway by prescription, it must also appear that the user was adverse and not permissive; and that it continued twenty years at least.

That the use of a way was permissive and not adverse, may be presumed from the unenclosed and uncultivated condition, sandy nature and trifling value of the large extent of land over which it passes.

When long continued, uninterrupted public use of a way is offered in proof of a highway by dedication, there must also be evidence of an acceptance by the town in its corporate capacity, or of some recognition of it as a highway on the part of some lawfully authorized agents of the town.

The time during which a way has been publicly used is not necessarily an essential element in the proof of a highway by dedication and acceptance.

Twenty years' permissive public use of a way without interruption, either by the town or the owner of the land over which it passes, is not sufficient evidence of a legal highway, and to charge the town with its repair.

The public use of a way "as a highway" excludes the idea of permissive use.

ON EXCEPTIONS and MOTION to set aside the verdict as being against evidence.

CASE for injury occurring in consequence of a defect in an alleged highway in the defendant town.

The following instructions, (requested by the defendants'

Mayberry *v.* Inhabitants of Standish.

counsel, so far as indicated by quotation marks) were given to the jury : —

" 2. If, from the facts in the case, the jury shall find that the use of the road in question, as proved, has been permissive, and by the indulgence and license of the owner of the land over which it passes, then such use does not impose upon the defendants an obligation to keep it in repair." If the public have used this way by permission, indulgence and license from the owners, it does not constitute that adverse use which the law requires ; because, if they are occupying by license, they are not occupying adversely to the owners of the land.

" If the plaintiffs claim the existence of the road in question, by dedication, then it is incumbent on them, not only to prove the act of dedication by the owners of the land over which it passes, but also to prove that the inhabitants of the town of Standish have adopted the road, by repairing it, assigning it to a surveyor of highways for his supervision, or by some other act, recognizing it as a highway, and their liability to repair it."

If a person dedicates a piece of land to the town as a highway, the dedication of it does not impose upon the town the liability of repairing it, or of using it. In order to make the town liable, they must accept the dedication, gift or grant. If they do, it becomes a highway, — and unless the town does accept, by some act or other recognizing it as a highway, then there is no liability to keep it in repair.

"That the evidence of a dedication may be rebutted in various ways, and if the jury find such facts as are stated in requested instruction, No. 3, then they may presume that the owners of the land over which the road passes only intended to give license to pass over their land, and not to dedicate it to the public, — but if the jury find a dedication, still that is not operative to subject the town of Standish to a liability to repair the road, unless the plaintiff shall also prove that the town has adopted the road."

If the owners intended to give license instead of dedicat-

ing it, then you may so find,—and, if the jury find a dedi-
cation and do not find an acceptance by the town, as before
remarked, that does not make the town liable to keep the
way in repair.

The verdict was for the defendants, and the plaintiffs al-
leged exceptions.

The remaining material facts and instructions are stated
in the opinion.

*S. C. Strout & Gage*, for the plaintiffs.

There was no evidence upon which to base the second re-
quested instruction, and thereby the jury were confused.

The fourth request, with the addition made by the presid-
ing Judge, makes necessary the acceptance of the way by
the town in its corporate capacity. If a way is dedicated
to the public (as all highways by dedication are, and not to
the town,) the use of it by the public indiscriminately, who
have occasion therefor, is sufficient evidence of acceptance
by the public to make it a highway, especially if the use
have continued more than twenty years. It is not necessa-
ry that the town accept it; but the public by using it.

The same objection to the fifth request as given, in requir-
ing the acceptance by the town, as a town, of a way dedi-
cated to the public, as a condition precedent to the liability
of the town to keep in repair. *Rex* v. *Leake*, 5 B. & Ad.,
481, 488; *Commonwealth* v. *Low*, 3 Pick., 412.

The instruction which the Court finally gave, as contain-
ing the embodiment of the whole charge on the subject, re-
quired the plaintiffs to show an uninterrupted and adverse
use of the way by the inhabitants of Standish and others of
the public for sixty years, in order to constitute it a high-
way.

This required us to prove a strict prescriptive way, and
excluded all ways by dedication or of location, the evidence
of which was lost, or by user alone,—and so confined the
plaintiffs within too narrow limits.

The true instruction which should have been given (free

from the technicalities of dedication and prescription,) is: that proof of the public use of the way, as a highway, for more than twenty years, without any interruption by the town or the owners of the land over which it passed, is sufficient evidence that it was a legal highway, and to charge the town with its repair.

This position is as favorable to the defendant as the law will allow, and is fully sustained by the authorities in this State and Massachusetts, and is based upon satisfactory reasoning. *Jennings* v. *Tisbury*, 5 Gray, 77; *Estes* v. *Troy*, 5 Maine, 368; *Abbott* v. *Mills*, 3 Vt., 521; *State* v. *Wilkinson*, 2 Vt., 480; *Valentine* v. *Boston*, 22 Pick., 80, 81.

It is not necessary that the user should be adverse to the owner of the land, nor that the user should be by the inhabitants of Standish. If the owner acquiesces in the public use of the way, as a highway, for more than twenty years, that is a dedication, and he is estopped to deny the existence of the way and cannot afterwards revoke the dedication. *City of Cincinnati* v. *White*, 6 Pet., 438; *Larned* v. *Larned*, 11 Met., 421; *Bangor House* v. *Brown*, 33 Maine, 315; *Cole* v. *Sprowl*, 35 Maine, 170.

The instructions of the Court, in these particulars, were erroneous, and confined the plaintiffs within narrower limits than the law required, and had a tendency to mislead the jury,—and, it is believed, did mislead them,—to the injury of the plaintiffs.

*Swazey*, for the defendants.

BARROWS, J.—The report of the evidence shows that, over a somewhat extensive tract of pitchpine plains nowhere enclosed by fences, deemed of trifling value for agricultural purposes, called Chadbourne's Plains, in the town of Standish, there has been a road more or less travelled for the last sixty-five years during summer, and, in winter, when the depth of snow would permit, by those who had occasion to go from Standish Neck to Gorham Corner, or Moody's

mill, in Gorham.   It was also a convenient route for those
living in one neighborhood in the north-western part of the
town of Gorham to go to Standish Corner, or the east side
of Sebago lake, and for people in the vicinity, who visited
these plains to pick blueberries in their season or to get
hoop poles; and it was somewhat frequented for such pur-
poses.  It was the continuation of a town road in Gorham,
and was wrought and repaired in that town up to the Stand-
ish line, and it even had served occasionally as a by-way
for a stage to pass over, when one was running to Chad-
bourne's Landing, at the foot of the lake.   But there were
no houses on it in Standish, nor was it anywhere fenced out
in that town.   There was no record evidence that it had
ever been located, nor any evidence whatever that, during
all these years, the town of Standish, or any of its officers,
had ever recognized its existence as a highway or town way,
by expending anything upon it for repairs, for the removal
of obstructions temporary or permanent, for the erection
of guideboards, or for any other purpose in any manner
connected with it.   It was never broken out or travelled
during the winter after the heavy snows came.   In "blue-
berry time" it seems to have been a good deal frequented;
carriages passed over it at all hours at that season.   In
short, it appears to be satisfactorily proved that, for a period
of not less than sixty-five years, anybody who saw fit to go
through there, whether on foot or with a team, or carriage,
had done so.   Bushes springing up in the path or interfer-
ing with the travel, were removed from time to time, by a
man who lived near by and made frequent use of the road,
and who testifies that he got permission of the owner of the
land to do so.   Up to the time of the accident, the proprie-
tors of the land do not appear to have interfered to prevent
anybody from going there. · The road had never been fenced
up or the travel intentionally obstructed by any one.   After
the accident, and some two years before the trial, the owner
of the land fenced up a small piece of the end of the road,
(from four to six rods,) whereupon the travellers, instead of

removing the obstruction, struck out a new path outside of his fence.

The plaintiffs' testimony tends to show that, on the day of the accident, they had visited these plains to pick blueberries, and were on their return when the accident happened, at a place where there were two travelled carriage paths about six feet apart. Mr. Mayberry took the older track, which was a little sideling, and, in the wheelrut on the lower side, the hard crust had been worn through to the loose sand, and there was a sudden falling off of some ten inches in depth or thereabouts, continuing for some rods, while the other wheel track ran on firm earth.

There were four grown persons in a common two-seated express wagon, and, when the wheels struck into this depression, the wagon tipped far enough to throw out the female plaintiff and the lady who was sitting behind her on the lower side, each with her pail of blueberries in her lap; and Mrs. Mayberry suffered serious injury. The wagon was not upset nor the fluid contents of a pail, which was in it, spilled.

The defendants introduced testimony tending to show that the condition of the road was not such as to constitute a defect, and that other people, exercising no more than ordinary care, drove over the same track on that day without inconvenience.

From this abstract of the voluminous testimony, it is apparent that there were at least three vital questions contested before the jury,—the existence of a way which the town of Standish was bound to keep in repair,—the existence of a defect,—and the exercise of ordinary care on the part of the plaintiffs. The jury viewed the premises, and returned a verdict for the defendants, which the plaintiffs move to set aside as against law and evidence.

It cannot be known upon which of the grounds above referred to, the verdict was based. The testimony, as to two of them is sufficiently conflicting to forbid our sustaining the motion.

Exceptions were filed to instructions given relating to the existence of a way, and these remain to be examined.

The jury was substantially instructed, among other things, as follows : — " that a way might be established by a location in the mode pointed out by the statutes; or that the public might acquire the right of way by prescription, that is, by the long continued, uninterrupted adverse use of it, continued for at least twenty years in succession," — or by dedication, which was thus explained ; " if an individual owning a piece of land dedicates it to the public for a way, and the public accept it, they may thus acquire a right of way over that property, and the particular length of time of the user is not a very material circumstance in determining that question. If an individual had openly and publicly, or by a written instrument, given the land for a street or highway, and the city or town by corporate action accepted it, that would be a dedication and acceptance."

They were further instructed that when ways have become public highways in either of these modes, then towns were obliged to keep them in repair. But the instructions particularly complained of by the plaintiffs' counsel are the following : — " If, from the facts in the case, the jury shall find that the use of the road in question, as proved, has been permissive, and by the indulgence and license of the owner of the land over which it passes, then such use does not constitute a road by prescription so as to impose upon the defendants an obligation to keep it in repair." "If the public has used this way by permission, indulgence, and license from the owners, it does not constitute that adverse use which the law requires, because, if they are occupying by license, they are not occupying it adversely to the owners of the land." " If, from the facts proved, the jury shall find that the road in question passes over a large extent of woodland not enclosed with fences, and uncultivated, and that the use of the road, as proved, has not been injurious to the owner of the land over which it passes, then the jury may presume that such use has been permissive and not ad-

verse." "If the plaintiffs claim the existence of the road in question by dedication, then it is incumbent on them not only to prove the act of dedication by the owners of the land over which it passes, but also to prove that the inhabitants of the town of Standish have adopted the road, by repairing it, assigning it to a surveyor of highways for his supervision, or by some other act recognizing it as a highway, and their liability to repair it."

Now, in opposition to these doctrines, the plaintiffs contended at the trial, and claim here that proof of the public use of the road for more than twenty years, without any interruption by the town or the owners of the land over which it passed, was sufficient evidence that it was a legal highway, and to charge the town with its repair. They assert that there was no evidence in the case upon which the foregoing instructions as to the effect of a permissive use or license from the owners of the land could properly be based, — that it is not necessary to the establishment of a highway by dedication that there should be any corporate action accepting it. It is urged, that twenty years' permissive use shows a dedication, and makes the town liable to repair the way, whether they have ever recognized it or accepted the dedication or not, — that the dedication is to the public, the acceptance is made by the public, — and that the town thereby becomes liable to keep the way in repair; and that the jury should have been instructed that proof of the public use of the way as a highway for more than twenty years, without any interruption by the town or the owners of the land over which it passed, is sufficient evidence that it was a legal highway, and to charge the town with its repair, and that in this manner the jury would have had a correct practical rule, free from any technical learning about dedication and prescription.

It must not be overlooked that a new element is here introduced into the doctrine contended for at the trial, and into which the ingenious counsel occasionally slides in his argument here, when he contends that twenty years' per-

missive use shows a dedication, and makes the town liable
to repair.   At the trial it was claimed, on the part of the
plaintiffs, that such a use as was indisputably proved, i. e.,
an actual, frequent use of the road over these unenclosed
plains by all and sundry who had occasion to go there, con-
tinued for a period of sixty years or more, as the witnesses
testified, and not prohibited by the owners of the land, was
of itself sufficient to charge the town with the maintenance
of the way and make them responsible for accidents occur-
ring by reason of defects therein.   But such use might be ·
permissive merely ; and when counsel comes to state the le-
gal proposition which he claims to be correct, he qualifies
his original position thus : — "the public use of the way as
a highway for more than twenty years without interruption,
&c., is sufficient evidence that it was a legal highway, and
to charge the town with its repair."  Now the use of the
way as a highway, excludes the idea of permissive use.   It
is a use which all claim as a right.   If we assume, then, as
plaintiffs' counsel would have us, that " the public use of
the way," as a highway, "for more than twenty years, with-
out any interruption by the town or the owners of the land
over which it passed, is sufficient evidence that it was a le-
gal highway, and to charge the town with its repair," it is
evidently necessary, in order to avoid misleading the jury
by such a statement, to call their attention to the distinction
between the use of the way, " as a highway," and a use which
might be merely permissive.

Assuredly, the plaintiffs have no just cause to complain of
these instructions.   Under them, they were at liberty to
show the existence of a way by location, — by dedication and
acceptance, or by prescription.   If they failed, it was for
want of sufficient evidence to establish it in either of those
modes.

There was no suggestion that the town was estopped to
deny its existence, under § 62, c. 18, R. S.   The volum-
inous report of the evidence not only does not show any
repairs made upon the road by the defendant town within

six years, but fails to exhibit the slightest trace of any re-cognition of it by the town at any time in the whole sixty or seventy years during which there has been more or less travelling over the plains there.

The jury were duly instructed that the long continued, uninterrupted user, was evidence for them to consider in determining whether there had once been a legal location of the way, the record evidence of which had perished in the lapse of time. They found no such location. It is prob-able that the character of the route, (which they viewed,) and of the territory over which the road wandered, and the evidence of the neighbors who occasionally " bushed it out" for their own convenience, and the utter lack of any recog-nition of it by the town authorities for so many years, pre-vented any such finding.

Upon the various points presented by the exceptions, we hold : —

1. That the unprohibited use of a road by travellers, however long continued, if it is unaccompanied by other facts from which its origin and character may be determined, does not raise an indisputable presumption that the road was ever legally located, or has become a highway by pre-scription, or by dedication and acceptance. If travellers strike out a path for themselves over waste lands lying in common and unenclosed, (or follow a path that has been used by the proprietor of such lands,) and other travellers continue the practice, even for a term of time whereof the memory of man runneth not to the contrary, it does not necessarily follow that there is a legal highway there. The presumption that there has been a legal location, at some forgotten period in the past, is one of fact and liable to be rebutted.

2. As to the existence of a way by prescription, the jury were instructed that if, at the time of the accident, "this way had been travelled continuously, uninterruptedly and adversely to the owners of the soil over which it passes, for a period of time extending beyond the memory of man,

Mayberry v. Inhabitants of Standish.

and for at least sixty years, by the inhabitants of Standish and such of the public generally as have had occasion or desire to travel it, and it was in fact so travelled by the public generally, this will be sufficient evidence to authorize you to find it such a way as the town of Standish was by law on that day bound to maintain and keep in repair."

No citation of authorities can be necessary to establish the doctrine that, in order to acquire a right of way by prescription, the user must be adverse. Plaintiff complains of this instruction as calling upon him to show an uninterrupted and adverse use of the way by the inhabitants of Standish and others for sixty years, in order to make it a highway; and as requiring him to prove a highway by prescription, and excluding all ways by dedication or by location, the record evidence of which was lost.

Perhaps there might be force in the complaint, if the Judge had not told the jury, in this connexion, that the term of sixty years was mentioned, not because a less time would not be sufficient to. authorize the finding, but because there was no conflict of evidence as to the length of the user, or as to the use of the road by the inhabitants of the town who had occasion to pass there, or as to the absence of any objection or interruption by the owners of the land. The jury were here reminded by the Court that " one witness recollects it for a period of sixty-five years; no witness recollects when there was not a road there." He had also elsewhere, as we have seen, instructed them that the way might be established by proof of location in the mode pointed out by the statutes, and that they "might consider the long continued uninterrupted use as evidence of the fact of such location"; and that the public might acquire a right of way by the uninterrupted adverse use of it continued for at least twenty years in succession, or by dedication of the owner and acceptance by the town; and that, when ways had become public highways in either of these modes, towns were obliged to keep them in repair.

It is not easy to perceive how under such circumstances

the jury could have been misled to the prejudice of the plaintiff by the instruction in question.     Whether the instruction could have been sustained, if the jury had found that the user was adverse, and the defendants had excepted, we are not called upon to decide.     It will be time enough to determine whether it is possible for individual members of that uncertain quantity, "the public," even though some of them are inhabitants of the town, to cast upon the town the burden of maintaining as a public highway every right of way they may acquire over their neighbor's waste land, in the absence of all proof of any attempt at location, or of any recognition by the town or its officers or agents, — when such determination is essential to the decision of a cause. It is sufficient here to say that no rights of the plaintiff were violated by the instruction, as explained by the presiding Judge, taking it in connection with the other instructions given in the case.

3. There was evidence in the case, some of which has been herein before referred to, from which it was competent for the jury to find the use permissive on the part of the owners of the land ; and the plaintiffs' objection to the instructions for this cause is not well founded.     The open and unenclosed condition of the land, a sandy, pitchpine, blueberry plain of trifling value, was a matter from which it might be presumed that the use was permissive.     *Hewins* v. *Smith*, 11 Metcalf, 241.

4. Nor was there any error in requiring proof of some act equivalent to an acceptance by the town, in order to establish a way by dedication.     It is not competent for a proprietor of land to cast the burden of maintaining a highway across it upon the town in which the land lies, by opening and dedicating a way over it to the public, even though he finds his neighbors willing to walk therein.     They cannot claim to hold the town responsible for accidents which may occur there, unless the town or its lawfully authorized agents shall in some way signify their acceptance of such dedica-

.tion. Abundant statute provisions are made for the regular location and establishment of highways and townways. If it is claimed that a way has been established in some manner independent of these, it would seem that some act of the party upon whom the liability to maintain and repair it is cast, should be held requisite to produce that effect.

It is true, that, in *Rex* v. *Leake*, 5 B. & A., 469, it was held that the assent of the parish was not necessary to establish a highway by dedication.

But the English decision is entitled to but little weight here for the reasons suggested by SHAW, C. J., in *Hobbs* v. *Lowell*, 19 Pick., 410, the decision of which is placed by that eminent jurist expressly upon the ground that the city of Lowell and all other parties concerned had expressed their assent to the dedication, there in question. In that case, an ancient county road had been stopped by the erections of the Proprietors of Locks and Canals, &c., who at the same time opened Merrimac street, upon which the accident occurred, in the general direction of the old road and leading into it at each extremity. Under the direction of the selectmen of Lowell a guideboard had been placed at the corner of the new street, pointing through it. The municipal officers entirely omitted to proceed against those who stopped up the old highway and substituted the new street, and, under such circumstances, it was rightly held that the assent of the city to the dedication might be inferred.

We know of no case in this country where a way by dedication has been held to be established so as to impose any liability upon a city or town, without evidence of the assent of the corporation, express or implied.

In *State* v. *Wilson*, 42 Maine, 24, C. J. TENNEY remarks:—"But it does not follow that, because there is a dedication of a public way by the owner of the soil, and the public use it, the town or other public corporation is bound to keep it in repair. To bind a corporation to this extent, it seems to be required that there should be some

proof of acquiescence or adoption by the corporation itself." We do not hesitate to pronounce this to be the true doctrine.

Long continued, uninterrupted public use is a proper element of proof to establish the existence of a highway, in either of the three modes recognized by the law, — by location, by prescription, or by dedication and acceptance. And we think any apparent conflict of the *dicta*, in cases of this description, may be traced to a want of care to distinguish between the purposes for which the evidence of it is offered.

In *Sprague* v. *Waite*, 17 Pick., 320, it is said that "the long and uninterrupted use of a public highway is legally and justly taken to be evidence of a previous legal and regular proceeding, by which a certain portion of land has been appropriated to public use as a highway." This is true; but, if other evidence in the case rebuts the presumption thence arising, and we are satisfied that no such proceedings were ever had, then, if we would apply the evidence of the user to the establishment of a highway purely prescriptive, it must appear that the user was adverse and not permissive merely; or, if it is offered to show a way by dedication, then there must be evidence of an acceptance by the party to be charged with its maintenance.

We find nothing radically inconsistent with the views here expressed, in the authorities cited for the plaintiffs.

In *Todd* v. *Rome*, 2 Maine, 55, though there had been a laying out by the selectmen which was defective, and an acceptance by the town, and an expenditure of the town's money in repairs, the nonsuit ordered at *nisi prius* was confirmed, and the *dicta* upon which the plaintiff relies manifestly have reference to the hypothesis of a dedication or assent on the part of the owner of the lands. The proof of acceptance by the town in that case, (if any facts from which a dedication might have been inferred had appeared,) was abundant.

*Rowell* v. *Montville*, 4 Maine, 270, was another case of defective location, and though there was a vote of the town

accepting the road, (passed without a corresponding article in the warrant,) and a guideboard erected at one end, and the road was much used by the citizens of the town, and it appeared that the owner of the land over which it passed had always acquiesced in the appropriation of it to the public use, the Court say the action cannot be maintained, because no adverse appropriation or use of land as a road could take away the owner's right of entry, and give the town the right to dig up the soil and do what was necessary in repairing the road, and no right of way by prescription can be acquired, either by an individual or the public, except by a continued adverse claim, and user for at least twenty years. This certainly does not sustain the plaintiffs' claim that " it is not necessary that the user should be adverse to the owner of the land." The plaintiff had the full benefit of the doctrine implied, as well as the doctrine expressed in this case, in the instructions given by the presiding Judge with regard to a way by prescription.

In *Estes* v. *Troy*, 5 Maine, 368, the plaintiff was equally unfortunate, though the road had been opened in 1812, and annually repaired till 1828, by the surveyors of the town; and it is manifest that an adverse user is contemplated, when the Court say that, " after a road or way has been opened, continued and travelled for twenty years without interruption or incumbrances, it may be considered and treated as a public way."

In *Jennings* v. *Tisbury*, 5 Gray, 73, the Court are speaking of " public ways by prescription," for the acquirement of which, as we have already seen, an adverse user is necessary; and the case simply declares the doctrine that evidence of general uninterrupted public use of a road, *as a highway* for twenty years, is sufficient to charge a town with liability to keep it in repair. What is implied in the use of a road " as a highway" we have already seen. In the case at bar, the plaintiffs' misfortune consisted in a want of evidence to satisfy the jury that the use of this path over the plains was any other than a permissive use.

Finding no error in the instructions of which the plaintiffs can justly complain, the entry must be

*Motion and exceptions overruled.*

KENT, DICKERSON, DANFORTH and TAPLEY, JJ., concurred.

APPLETON, C. J., did not sit.