ANSEL N. SPENCER *vs.* DENNIS BOUCHARD.

Penobscot.    Opinion June 6, 1923.

*A deed conveying one half of grantor's interest cannot by oral testimony be made to embrace the whole.    The probating of a foreign will cannot be attacked collaterally for want of jurisdiction, in absence of fraud, in attempting to show testatrix was a resident of this state at her decease.    Legal title to real estate may be acquired by adverse possession under an oral grant.*

A deed which in terms purports to convey one half of the grantor's interest in certain premises cannot be construed through the aid of oral testimony or otherwise to convey the whole premises.

A decree of the Probate Court in Maine admitting a will to probate as a foreign will cannot be collaterally attacked for want of jurisdiction by attempting to show that the testatrix was a resident of this State at the time of her decease, no fraud being shown.

An oral grant may ripen into a legal title by adverse possession under certain circumstances, but the circumstances here prohibit such a ripening in the defendant's grantor, who was a co-owner in reversion of a certain undivided interest and also a tenant for life in another undivided portion.

On report.    This is a writ of entry to recover certain premises in Milford, consisting of a house and about eighteen acres of land, and

mesne profits. Plea, the general issue and a brief statement setting up adverse possession and estoppel. At the conclusion of the testimony, by agreement of the parties, the case was reported to the Law Court. Judgment for plaintiff.

The case is fully stated in the opinion.

*Howard M. Cook,* for plaintiff.

*George H. Worster and George H. Morse,* for defendant.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, DUNN, MORRILL, WILSON, DEASY, JJ.

CORNISH, C. J.    This is an action in a plea of land, reported upon so much of the evidence contained in the record as may be legally competent and admissible, wherein the plaintiff demands of the defendant certain real estate situated in Milford. The declaration contains two counts. In the first the plaintiff alleges seisin of the premises as of fee, in the second seisin as of an estate for life.

The defendant pleaded the general issue and by way of brief statement alleged that he, and those under whom he claimed, had been in actual, continuous possession of the whole of the demanded premises for more than twenty years next prior to the date of the plaintiff's writ, to wit, from and including the fourteenth day of April, A. D., 1897, to September 18, 1920, a period of slightly more than twenty-three years, claiming to hold said premises by adverse, open, peaceable, notorious and exclusive possession. Further, by way of brief statement, the defendant alleged that the plaintiff has not and never had any title to the demanded premises, nor to any part thereof, but that if he ever had any such title he is estopped by his own acts and conduct from setting up or claiming any title to the same or to any part thereof.

Three issues, therefore, are presented, viz., the plaintiff's title, adverse possession by the defendant and those under whom he claims for more than twenty years next prior to the date of the writ, and estoppel arising from plaintiff's conduct and acts.

PLAINTIFF'S TITLE.

It is well-settled law in this State that in a writ of entry to recover land the burden is upon the plaintiff to show a legal title. *Day* v.

*Philbrook,* 89 Maine, 462. He must recover, if at all, upon the strength of his own title and not upon the weakness of that of the defendant. Proof of both the right of entry at the time of the commencement of the action, and of such an estate in the premises as he has alleged, is necessary before he can recover although the defendant shows no title in himself. *Powers* v. *Hambleton,* 106 Maine, 217; *Wyman* v. *Porter,* 108 Maine, 110. An equitable title or estate will not sustain a writ of entry, for whatever may be the equitable interests of the demandant in the demanded land, or whatever interest or title he might acquire therein through appropriate equity proceedings, he cannot recover judgment in a real action unless at the date of his writ he then had vested in himself the legal title and immediate right of possession, *Low* v. *Marco,* 53 Maine, 45; *Merritt* v. *Bucknam,* 77 Maine, 253.

### PLAINTIFF'S INTEREST IN FEE.

The plaintiff claims an undivided interest in fee, and also a life interest under the will of Mercy A. Townsend. We will consider first the plaintiff's undivided interest in fee as proved by the deeds.

It is admitted by both parties that Jane Spencer formerly owned the premises in dispute. She obtained title through two deeds, one undivided half by each deed. The first is one of warranty, dated February 20, 1869, from James O. Foss and Augusta A. Foss and conveys "one undivided half" of the premises. The second is dated February 19, 1869, from Cyrus Knapp, guardian of Carrie S. Foss and Victoria S. Foss, minors, is a guardian's deed containing the usual covenants as to observance of rules and directions of law concerning sale of real estate of minors, and also conveys "one undivided half" of the premises. On August 13, 1891, Jane Spencer gave a warranty deed of "one undivided half" of the premises to her two daughters Mercy A. Townsend and Adeline Noyes. This deed states that the property referred to is the same "conveyed to me by James A. Foss by deed recorded in Penobscot Registry of Deeds, Vol. 386, Page 365, reference to be had thereto for further description." It should here be noted that although the deed says "James A. Foss" yet reference to the Foss deed, and to the record thereof, clearly shows a mere clerical error on the part of the scrivener and that James O. Foss was intended.

Vol. 123—3

The plaintiff at this point strenuously urges that the deed from Jane Spencer to her two daughters Mercy A. Townsend and Adeline Noyes, was intended to convey and did convey not an undivided half but all the premises.  In view of the explicit language of the deed we cannot so construe it.  The description in the deed is as follows:  "A certain lot or parcel of land with the buildings thereon, situated in said Milford and described as follows:  "Being an undivided half of a strip of land off the north side of a lot of land occupied in 1869 by James A. Foss and previously occupied by James Foss as a homestead.  Said strip of land is eighteen rods wide measuring from the north side of said lot and extends from the Penobscot River to Otter Stream, holding the width of eighteen rods throughout, and contains sixteen acres more or less.  Being the same property conveyed to me by James A. Foss by deed recorded  .  .  .  ."  Not only does the deed in express terms declare that one undivided half is conveyed but it goes on further and describes the portion granted as the same conveyed to the grantor by the deed of James A. (O.) Foss, and that deed conveyed to her only one undivided half. The description in the two deeds is practically identical, and can neither be ignored nor distorted.

In *Hubbard* v. *Greeley*, 84 Maine, 340, this court was requested to construe a deed which contained the words "undivided half" as conveying the whole of the land, but the request was denied, the court saying "We have the words 'undivided half' in the deed and we cannot doubt that they were put there for a purpose, and that that purpose was to describe the interest conveyed."  In *Hines* v. *Robinson*, 57 Maine, 324, it was held "Where the language of a conveyance is intelligible and consistent we cannot let in parol evidence to show the intention of the parties and to limit its extent by construction in a way which would violate any of its calls.  Their intention must be ascertained from the writing itself, which, in such cases, is the best and only legal evidence of it.  .  .  .  .  A deed, which through the ignorance or heedlessness of the scrivener, misrepresents the bargain between the parties, may doubtless be reformed in equity, but until that is done it must be allowed to have, in a suit at law, all its legitimate effect according to its terms."

In the case at bar, a real action, which must be governed by rules of construction applicable to such actions, we can see no reason or authority to adopt the construction asked by the plaintiff, and must

hold that the deed from Mrs. Spencer to Mrs. Noyes and Mrs. Townsend vested in the grantees only one undivided half of the premises in dispute, or one fourth in each. The title at this point then stands as follows: In Jane Spencer, one half; in Mercy A. Townsend, one quarter and in Adeline Noyes, one quarter.

The next change in the title occurred on November 30, 1891, when Adeline Noyes conveyed by quitclaim deed to her sister Mrs. Townsend "the undivided half of any all my right title and interest in and to a certain lot" &c., describing the premises in question. Here again the grantor expressly conveyed not her whole but only one undivided half of her interest in the premises, and for the reasons already given, and under the authorities before cited, in construing the deed from Jane Spencer to Mercy A. Townsend and Adeline Noyes, we must hold in this action at law that Adeline Noyes conveyed only one half of her one quarter, or one eighth, and retained the other one eighth. At this stage, therefore, (1891) the record title stands as follows: In Jane Spencer one half, in Adeline Noyes one eighth, in Mercy A. Townsend one quarter from Jane Spencer and one eighth from Mrs. Noyes, or three eighths.

The next change took place on November 16, 1895, when the mother Jane Spencer died intestate, leaving no husband, but five children, Adeline Noyes, Lafayette Spencer, Elmina Caverly, Bowman Spencer and Mercy A. Townsend, each of whom inherited one fifth of the mother's one half, or one tenth. This leaves the title as follows: in Adeline one eighth by deed from her mother after having conveyed one eighth to Mercy, plus one tenth by descent from her mother, or nine fortieths in all; in Mercy three eighths plus one tenth or nineteen fortieths; in Lafayette Spencer one tenth or four fortieths; in Elmina Caverly one tenth or four fortieths; in Bowman Spencer one tenth or four fortieths, which accounts for the entire ownership immediately after the mother's death.

The next change occurred in 1897, when on March 14, Mercy A. Townsend, then a widow without children, died, and her share, nineteen fortieths, subject to the life estates created by her will which we shall discuss later, descended in equal shares to her four brothers and sisters, Lafayette, Adeline, Elmina and Bowman, each taking one fourth of her nineteen fortieths, or nineteen one hundred and sixtieths.

The title, disregarding the life estate, was then held as follows:

In Adeline Noyes, nine fortieths, plus nineteen one hundred and sixtieths, or fifty-five one hundred and sixtieths;

In Lafayette Spencer, four fortieths, plus nineteen one hundred and sixtieths, or thirty-five one hundred and sixtieths;

In Elmina Caverly the same; in Bowman Spencer, the same.

The next change. Lafayette Spencer died July 26, 1900, intestate, never married, and his thirty-five one hundred and sixtieths passed by descent in equal shares to Adeline, Elmina and Bowman, or thirty-five four hundred and eightieths to each.

This leaves the title as follows:

In Adeline Noyes, fifty-five one hundred and sixtieths, plus thirty-five four hundred and eightieths, or two hundred four hundred and eightieths.

In Elmina and Bowman one hundred and forty four hundred and eightieths each.

This accounts for the entire ownership.

As we are seeking to ascertain only the extent of the plaintiff's title it is unnecessary to trace these reversionary interests further, except to note that Elmina Caverly died intestate in 1911, leaving a husband and two sons. These three on June 14, 1918, conveyed Elmina's share to the plaintiff, Ansel N. Spencer. This Elmina Caverly interest consisted of one tenth in fee from Jane, one third of one tenth, or one thirtieth from Lafayette, also in fee, a total of four thirtieths, or two fifteenths, and also a reversion in seventy-six four hundred and eightieths.

This prolonged arithmetical computation therefore shows that the plaintiff is the owner of one hundred and forty four hundred and eightieths in fee, two fifteenths or sixty-four four hundred and eightieths in presenti and seventy-six four hundred and eightieths in futuro.

### PLAINTIFF'S LIFE INTEREST.

In addition to his interest in fee, the plaintiff claims a life estate in a portion of the premises. This came to Ansel through the will of Mercy A. Townsend. The provision in the will is as follows: "Third, I give devise and bequeath to my brother Bowman Spencer of Milford, Maine, my farm and house situated in Milford, Maine,

during his natural life, and to pay taxes and insurance on said property, and at his death to go to my nephew Ansel N. Spencer during his natural life." Bowman having died prior to the commencement of this action, the plaintiff's life estate in the nineteen fortieths owned by Mrs. Townsend at the time of her decease came into being and for that life estate he is entitled to judgment so far as the record title shows. In her will Mrs. Townsend apparently devised a life estate in the whole farm, but she could devise a life estate in no greater interest than she owned, and that was nineteen fortieths as we have seen.

The defendant, however, attacks this devise of a life estate under the Townsend will, and claims that no interest passed thereby because of lack of jurisdiction in the Probate Court in Maine.

It appears that this will, in which she declared her residence to be New York City, was made and executed there on July 24, 1896. The executor named in the will was a New York attorney, one A. M. Card. In the early part of the following year Mrs. Townsend came to Milford, Maine, being then in failing health, and died in Milford on the fourteenth day of March, 1897, having been in that town from the date of her coming from New York until the date of her decease. No husband survived her. About a month after the death of Mrs. Townsend, namely, April 12, 1897, Card presented her will, with petition for probate, in the Surrogate Court for New York as a domestic will. Later he died, having taken no further steps in the procedure of proving the will and having the same allowed. According to the plaintiff's testimony Mrs. Townsend had told him she had made a will and "if anything happened to her to let Lawyer Card know." The plaintiff further testified that immediately after Mrs. Townsend's death knowledge of that fact was communicated to Mr. Card who sent a copy of the will, or as plaintiff says "we all received a copy of the will that was in his possession, each branch of the family." Nothing further was done by any one in the Surrogate Court until July 25, 1919, a period of more than twenty-two years, when, upon petition of plaintiff, and after the death of Bowman, Card's petition for probate was dismissed. On September 11, 1919, the plaintiff filed in the same Surrogate Court his petition for the probate of the will, the petition was amended December 17, 1919, and on March 3, 1920, the will was there allowed as a domestic will. On the twenty-fifth day of May, 1920, by petition of the plaintiff, the

will was allowed, filed and recorded, as a foreign will, in the Probate Court for the County of Penobscot, and on July first, 1920, an abstract thereof was recorded in the Registry of Deeds for that County. From the decree allowing the will as a foreign will no appeal was taken. Under its provisions, Bowman Spencer having died, the plaintiff claims a life estate, but as we have just seen he can rightly claim only a life estate in nineteen fortieths of the premises the extent of the interest owned by Mercy at her death.

The defendant contends that the will bestows no title or benefit upon the plaintiff because, as he says, Mrs. Townsend had her domicile in Maine at the time of her death and therefore the Probate Court in Maine was without jurisdiction to allow her will as a foreign will, and, further, because her residence (a jurisdictional fact) was not stated in the petition for probate in the Maine Court of Probate.

The effect of these objections is to make a collateral attack upon the decree of the Probate Court admitting Mrs. Townsend's will to probate as a foreign will, from which decree no appeal had been taken.

We think this attack is groundless. R. S., Chap. 67, Sec. 16, provides: "When a case is originally within the jurisdiction of the probate court in two or more Counties, the one which first commences proceedings therein, retains the same exclusively throughout; and the jurisdiction assumed in any case, except in cases of fraud, so far as it depends on the residence of any person, or the locality or amount of property, shall not be contested in any proceeding whatever, except on an appeal from the probate court in the original case, or when the want of jurisdiction appears on the same record."

An examination of this statute in its earlier stages, and the decisions of our court, throw much light upon its purport and effect. From the revision of 1857, to and including that of 1916, the section is in its present form. But in the earlier revision of 1841 we find in Chap. 105, Sec. 4, the provision "He (the Judge of Probate) shall have jurisdiction of all matters relating to the settlement of such estates, and to such persons under guardianship, and to whatever else by the provisions of law may come under his cognizance and jurisdiction; and, when a case shall be originally within the jurisdiction of the probate court in two or more counties, the court which shall first take cognizance thereof, by the commencement of proceedings, shall retain the same throughout, exclusively." But in the same chapter,

and in an entirely different section, namely, Section 22, is this pro-
vision: "The jurisdiction assumed in any case by a judge of probate,
except in cases of fraud, so far as it depends on the place of residence
of any person, or the locality or amount of property to be administered
upon, shall not be contested in any suit or proceeding whatever,
except on an appeal from the probate court in the original case, or
when the want of jurisdiction appears on the same record." Thus
it will be seen that the provisions which are combined in the revision
of 1916, Chap. 67, Sec. 16, were entirely distinct, originally, and that
the provisions of Chap. 105, Sec. 22, revision of 1841, are very broad
and comprehensive.

An early and leading case, in which these statute provisions were
discussed by this court, is *Record* v. *Howard*, 58 Maine, 225, decided
in 1870. In that case administration was granted in 1858 upon
representation that the deceased was a resident of Turner, in the
County of Androscoggin, at the time of her death, which fact, the
record says, was "made fully to appear." Although right of appeal
existed none was taken or claimed. The settlement of the estate
was allowed to proceed for over six years, and until the adminis-
trator's fourth and final account had been settled, and an order for
final distribution applied for, when, for the first time, objection was
made that the deceased, at the time of her death, did not reside in
Androscoggin County, but was an inhabitant of the State of Ohio.
This court there held, referring to the statute now before us, that
no appeal having been taken from the decree of the Judge of Probate
granting administration, and no fraud being shown, and no want of
jurisdiction being apparent upon the face of the record, the objection
came too late. After discussing the early provisions of law before
the adoption of this statute, which was a transcript from the Massa-
chusetts statute, and the uncertainty of titles which might arise
under the earlier law which was different than that provided by the
statute, our court said: "We cannot doubt the wisdom of this
change, for questions of domicile are among the most vexatious and
difficult that courts of justice have to deal with; and a rule of law
that would never allow such a question to be definitely settled, but
would allow every fresh litigant to open it anew, and, if he should
happen to succeed, thereby overturn a long course of administration,
and defeat titles to real estate of more than twenty years' standing

(as was done in *Holyoke* v. *Haskins*, 5 Pick., 20) is better calculated to defeat than promote the ends of justice." The conclusion of the court in the case from which we have just quoted is as follows: "The jurisdiction assumed by the probate court was original and not ancillary. It was assumed upon a representation (then satisfactorily proved) that the deceased at the time of her death was a citizen of this State. The record so states. No appeal having been taken, and no suggestion of fraud being made, we think the question of domicile must be regarded as conclusively settled for all purposes connected with the administration of the estate. To hold otherwise would subject the settlement of the estate to all the inconveniences which it was plainly the object of the statute to avoid."

The case to which we have been referring is one where original jurisdiction was assumed. The case at bar is one where ancillary jurisdiction was assumed. But we can perceive no reason why the legal principles involved are not equally applicable to both.

In cases cited by the defendant from other jurisdictions it does not appear that they were in any way governed by a statute similar to that in our own State. In those cases cited from our own courts we think each will show that "the want of jurisdiction appears on the same record."

Under the second objection raised by the defendant, touching the question of jurisdiction of the Maine Probate Court, it should be observed that R. S., Chap. 68, Sec. 14, providing that wills proved and allowed in another State or Country, according to the laws thereof, may be allowed and recorded in this State, and providing procedure in such cases, does not require, as one step in the procedure, that the residence of the deceased should be stated in the petition; moreover, the petition in this case, which the defendant declares is faulty to a degree sufficient to render all the proceedings in the Maine Probate Court void, is one which literally follows the form approved by the Supreme Judicial Court in 1895 and which, so far as we know, has been followed in our Probate Courts from that time to the present.

We, therefore, hold that the decree of the Penobscot Probate Court must stand and that under it the plaintiff holds a life estate in nineteen fortieths of the demanded premises.

So much for the plaintiff's title.

DEFENDANT'S ALLEGED TITLE BY ADVERSE POSSESSION.

The defendant claims title to the entire tract by virtue of a warranty deed with certain conditions as to support, from Bowman Spencer to his son George Spencer, dated January 10, 1918, and a warranty deed from George Spencer to the defendant dated April 3, 1919.

The source of Bowman's title he states in his deed to be: "The premises hereby conveyed having been occupied by me for twenty-eight years and claimed by me under an oral grant to me of the premises by Mercy A. Townsend for a valuable consideration to her passing."

An oral grant may ripen into a legal title by adverse possession under certain circumstances, as was held in the very recent case of *Nevells* v. *Carter*, 122 Maine, 81. But the circumstances here prohibit such a ripening.

We have already computed the interest of Bowman Spencer in these premises to be one hundred and forty four hundred and eightieths undivided. As to that amount he was tenant in common in reversion with his co-owners, and while a cotenant may be disseized if the facts justify it, no such facts appear here.

Moreover, Bowman had a life interest in the nineteen fortieths owned by Mrs. Townsend. No principle is better settled than that a person having title, the right of possession and possession, is presumed to hold by title and right of possession, to hold by right and not by wrong, *Bird* v. *Bird*, 40 Maine, 398; *Hudson* v. *Coe*, 79 Maine, 83, and that a life tenant in possession cannot gain title by adverse possession against the reversioners. *Pratt* v. *Churchill*, 42 Maine, 471.

The defense of adverse possession is without foundation.

ESTOPPEL.

The defendant urges that the plaintiff is estopped from making any claim (a) by not having the will recorded more promptly; (b) by failure to claim title when improvements were being made. But the plaintiff had no right of possession as life tenant until the life tenancy of Bowman had terminated. Knowledge of the provisions of the will, as to Bowman, might well excuse this plaintiff

from action until, as he believed, his rights as a. life tenant had ripened. Moreover, if Bowman was occupying as a life tenant under the will he was not holding adversely and could hold no betterments. *Pratt* v. *Churchill*, 42 Maine, 471. Therefore, there was no occasion for the plaintiff to act because the life tenant was making improvements. The claim of estoppel is without merit. .

JUDGMENT.

In his writ the plaintiff in the first count claims an estate in fee in the whole, and in the second count a life estate in the whole. Under R. S., Chap. 109; Sec. 10, "the demandant may recover a specific part or undivided portion of the premises to which he proves title although less than he demanded."

The plaintiff has proved in himself ownership of two fifteenths in fee, in presenti; seventy-six four hundred and eightieths in fee in reversion, and a life estate in nineteen fortieths. No interest in remainder can be. recovered in this action, but the plaintiff is entitled to judgment for his life interest and his in presenti interest in fee.

MESNE PROFITS.

The testimony shows that the rental value of the premises is about nine dollars per month. The defendant took possession April 3d, 1919, and the writ is dated seventeen and one half months later. This would mean a rental sum of one hundred fifty-seven dollars and fifty cents. As the plaintiff, by his life tenancy is entitled to immediate possession of nineteen fortieths, and also to two fifteenths of the premises in fee, we award to him as his proportional part of this rental value, the sum of one hundred fourteen dollars and ninety-seven cents.

> *Judgment for plaintiff as tenant for life in nineteen undivided fortieths, and in fee for two undivided fifteenths and for mesne profits computed as $114.97 with interest from date of the writ and costs.*