/ TDW -CUM-3/in/n ы

Johnson v. Coffin, CV-10-277 (Superior Ct. Cumberland)

In this case plaintiff Wanda Johnson is seeking declaratory and injunctive relief and damages for trespass with respect to a land dispute with adjoining property owners, defendants George and Jill Coffin, on Bailey Island. Before the court is plaintiff's motion for partial summary judgment dismissing defendants' affirmative defense of adverse possession.

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. E.g., Johnson v. McNeil, 2002 ME 99 ¶ 8, 800 A.2d 702, 704. The facts must be considered in the light most favorable to the non-moving party. Id. Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. Rodrigue v. Rodrigue, 1997 ME 99 ¶ 8, 694 A.2d 924, 926.

At the outset, several procedural issues should be addressed. First, this case was originally brought in Sagadahoc County and a consent order changing venue to Cumberland County was signed on June 7, 2010. However, plaintiff's summary judgment motion was apparently sent by mistake to Sagadahoc Superior Court, where it was received on December 10, 2010. Defendants filed an opposition memorandum (in Cumberland Superior Court) but did not file an opposing statement of material facts. After plaintiff filed a reply memorandum pointing this out, defendants filed a statement of material facts responding to plaintiff's statement of material facts accompanied by a correspondence arguing that the additional filing was timely because defendants had never been given notice that plaintiff's motion had ever been filed in the correct court.[1]

Although this is a rather unique fact situation, defendants' belated statement of material facts was filed within 21 days of the filing of plaintiff's motion in Cumberland. See M.R.Civ.P. 7(b)(1)(A). At the same time it appears that defendants are taking advantage of the misfiling to correct their failure to file a statement of material facts when they had already filed an opposition memorandum. Given that the rule expressly gives a party 21 days after the filing of a motion file opposition papers, the court is not prepared to decide the motion solely based on defendants' initial failure to file a statement of material facts. That is particularly true where defendants have not changed their arguments in any way and where defendants have in fact admitted all but one of the assertions in plaintiff's statement of material facts. With respect to the one statement which defendants have denied, Defendants' SMF ¶ 5, that denial was based on defendants' answers to interrogatories, and many of those same interrogatory answers were expressly referred to by plaintiff in her motion papers and are therefore already before the court.

---

[1] Apparently the Sagadahoc clerk's office forwarded plaintiff's motion to Cumberland, where it was filed on January 7, 2011

The second procedural issue is that plaintiff's statement of material facts cites to evidence which would could have been objected to as inadmissible hearsay, see, e.g., Plaintiff's SMF ¶¶ 14, 15. However, defendants have not objected to that hearsay and both parties in fact cite to that evidence, so the court will consider any hearsay objection as waived.

Turning to the merits of the summary judgment motion, the court observes that to some extent the parties' arguments are like ships passing in the night. First, although defendants raise a defense of "adverse possession" in their answer, it appears from the arguments raised by both parties that the actual dispute between the parties relates to whether the Coffins or the public have established a prescriptive easement over the disputed land.[2]

The pleadings indicate that there are two areas of land in dispute. The first is a 10 foot wide strip of land on the southern boundary of Johnson's land and on the northern boundary of the Coffins' land. The parties do not appear to dispute that although the 10 foot strip in question is encompassed within the property described in the deeds of both parties, its inclusion in the Coffins' deed results from an apparent scrivener's error that first appeared in an 1883 deed in the Coffins' chain of title. Plaintiff's SMF ¶ 6 (admitted). For this reason there does not appear to be any dispute that Johnson should be found to be the record owner of the 10 foot strip. However, Johnson's statement of material facts does not contain any assertions or refer to any other evidence relating to that 10 foot wide strip and specifically does not contain any evidence establishing that the Coffins cannot maintain an adverse possession or prescriptive easement claim as to that 10 foot wide strip.

As to the 10 foot strip, therefore, plaintiff's motion for partial summary judgment is denied.

The second disputed area of land involves Linwood Lane, which is located on Johnson's property to the north of the 10 foot wide strip. Linwood Lane runs across Johnson's property and provides access to another property which has a deeded right of way to use the lane. Plaintiff's SMF ¶ 16 (admitted). The dispute is whether the Coffins also have a right to use Linwood Lane, either because they have established a prescriptive easement over Linwood Lane or because there is a public easement to use Linwood Lane. There is no dispute that Linwood Lane has never been designated as a public way on town, state, or county records. See Plaintiff's SMF ¶¶ 17-18 (admitted). However, the Coffins do dispute that Linwood Lane is a private way. See Plaintiff's SMF ¶ 13 (admitted); Defendants' SMF ¶ 5. Specifically, they contend that they and their predecessors have used the lane to access their property for many years and that members of the public have always used the lane. Defendants' response to plaintiff's interrogatories ¶ 4; Plaintiff's SMF ¶¶ 11-12, 14-15.

---

[2] It is evident from the parties' papers that plaintiff is on notice that in raising an adverse possession defense, the Coffins are not necessarily arguing that they have established a claim of ownership to the disputed land but are instead contending that they have obtained a prescriptive easement through adverse possession.

The basis of plaintiff's motion with respect to Linwood Lane is two-fold. First, Johnson filed a notice pursuant to 14 M.R.S. § 812 to prevent acquisition of a right of way over Linwood Lane in 2005, and in 2009 she specifically revoked any permission that the Coffins may have had to use Linwood Lane. Plaintiff's SMF ¶¶ 7-8 (admitted). This is sufficient to establish that if the use of Linwood Lane by the Coffins and the public was permissive, that permission has been revoked. It does not resolve whether the Coffins or the public had already established a prescriptive easement without permission.

On that issue Johnson relies on evidence that her land was an undeveloped open field prior to 1972 and on authority which she contends establishes a presumption that any use of open fields is permissive. See Lyons v. Baptist School of Christian Training, 2002 ME 137 ¶ 19, 804 A.2d 364, 370. There are two reasons, however, why this presumption is insufficient for Johnson to prevail on summary judgment.

First, the Lyons decision makes clears that the presumption of permissive use is a "rebuttable" presumption. 2002 ME 137 ¶ 24, 804 A.2d at 372. Summary judgment can only be granted when the movant has established that there is no genuine factual dispute. The existence of a rebuttable presumption in favor of the movant leaves open the possibility that the party opposing summary judgment may be able to rebut the presumption. Johnson has not offered any evidence that would foreclose that possibility and has in fact cited to evidence that, considered in the light most favorable to the Coffins, might be sufficient to overcome the presumption of permissive use. See Plaintiff's SMF ¶¶ 11-12, 14-15.

Second, in the Lyons case the Law Court also emphasized that the presumption of permissive use does not follow from the nature of the land in question (open fields or wild, uncultivated land) but from the public use of that land for recreational purposes. 2002 ME 137 ¶¶ 21-24, 804 A.2d at 370-72. The evidence in the summary judgment record relating to the use of Linwood Lane by the public does not shed any light on whether that use was for recreational purposes or for other purposes. As a result, it is unclear whether the presumption of permissive use would apply.[3]

The entry shall be:

Plaintiff's motion for partial summary judgment is denied. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: March _10_, 2011

Thomas D. Warren
Justice, Superior Court

STATE OF MAINE
Cumberland, ss, Clerk's Office

MAR 1 1 2011

RECEIVED

---

[3] In addition to whether any public easement had been established, there remains an unresolved issue as to whether the Coffins can establish a separate prescriptive easement of their own.

3

WANDA JOHNSON VS GEORGE COFFIN AND JILL COFFIN

UTN:AOCSsr  -2010-0052400                           CASE #:PORSC-CV-2010-00277

---

01 0000002614          BARNICLE, JOHN F
   9 BOWDOIN MILL ISLAND PO BOX 636 BRUNSWICK ME 04011

| F | WANDA JOHNSON | PL | RTND | 05/21/2010 |
|---|---|---|---|---|

02 0000008923          DAVIS, JENNIFER A
   374 RIVER ROAD PO BOX 42 TOPSHAM ME 04086

| F | JILL COFFIN | DEF | RTND | 06/04/2010 |
|---|---|---|---|---|
| F | GEORGE COFFIN | DEF | RTND | 06/04/2010 |

STATE OF MAINE                                          SUPERIOR COURT
CUMBERLAND, ss.                                         CIVIL ACTION
                                                        Docket No. CV-10-277


WANDA JOHNSON

        Plaintiff,

v.                                                      ORDER

                              STATE OF MAINE
                          Cumberland, ss, Clerk's Office

GEORGE COFFIN, et al                    JUL 0 6 2011

        Defendants.                 RECEIVED


        A jury-waived trial was held in the above-captioned case on May 3, 2011, and the

parties thereafter submitted closing arguments in writing.

        This case involves a land dispute on Bailey Island. There are two specific areas of

land in dispute. The first is a 10-foot wide strip of land on the southern boundary of

plaintiff Wanda Johnson's land and on the northern boundary of land owned by

defendants George and Jill Coffin. The parties do not dispute that although the 10-foot

strip in question is encompassed within the property described in the deeds of both

parties, its inclusion in the Coffins' deed results from a scrivener's error that first

appeared in an 1883 deed in the Coffins' chain of title. The Coffins argue, however, that

they have acquired title to the 10-foot wide strip by adverse possession.

        The second disputed area of land involves Linwood Lane, which is located on

Johnson's property to the north of the 10-foot wide strip. Linwood Lane runs across

Johnson's property and provides access to another property which has a deeded right of

way to use the lane. The dispute is whether the Coffins also have a right to use Linwood

Lane, either because they have established a prescriptive easement over Linwood Lane

or because there is a public easement to use Linwood Lane.

The parties agreed at trial that the Coffins have the burden of proof on both their adverse possession and prescriptive easement claims.

## 1. Adverse Possession

A party claiming title by adverse possession has the burden of proving, by a preponderance of the evidence, that possession and use of the property was (1) actual; (2) open; (3) visible; (4) notorious; (5) hostile; (6) under a claim of right; (7) continuous; (8) exclusive; and (9) for a duration exceeding the twenty-year limitations period. Striefel v. Charles-Keyt-Leaman Partnership, 1999 ME 111 ¶ 6, 733 A.2d 984, 989. Accord, Weeks v. Krysa, 2008 ME 120 ¶ 12, 955 A.2d 234, 238.

Because this lawsuit was filed on May 21, 2010 and the Coffins only acquired their property on February 9, 2001, the twenty-year period that must be considered for purposes of adverse possession includes a period of almost 11 years when the Coffins' predecessor in interest owned their property.[1]

On this issue the court does not have to examine all nine criteria for adverse possession because it finds from the evidence at trial that the Coffins have not established exclusive or continuous possession of the 10-foot strip. "Exclusive" possession and use means that the possessor is not sharing the disputed property with the true owner or public at large. Striefel, 1999 ME 111 ¶ 17, 733 A.2d at 993. "Continuous" means occurring without interruption. Id. ¶ 16.

---

[1] Jill Coffin's mother, June Davis, occupied the Coffin premises pursuant to a life estate before the Coffins became the owners. Johnson argues that the Coffins cannot benefit from the time period during the life estate, citing Spencer v. Bouchard, 123 Me. 15, 25, 121 A. 164 (1923). However, that case only holds that a life tenant cannot gain title by adverse possession against the person holding a reversionary interest.

2

In this case there was evidence that both the Coffins (and their predecessors in title) and Wanda Johnson (and her predecessor in title)[2] have at various times occupied and exerted dominion over the 10-foot strip during the applicable 20-year period.

Specifically, the court finds from the evidence that the Coffins and their predecessors took certain actions consistent with adverse possession both before and during the relevant 20-year period, including mowing that strip on certain occasions, planting spruce trees within the strip, placing a mailbox within the strip, and placing an electrical pole within the strip.

However, the court finds that Johnson and her predecessors in title also occupied and exercised dominion over the 10-foot strip on various occasions during the relevant 20-year period. Johnson and her son and boyfriend also mowed and weed-whacked the strip on occasion, limbed trees that were in the strip, and called in a tree service to cut down the spruce trees that Coffin's family had planted in the strip.[3] The court therefore finds that the intermittent possession and use of the strip by Coffin and her predecessors was not exclusive or continuous.

In addition, there was also evidence that upon occasion the Coffins or their predecessors acknowledged the Johnsons' ownership of the 10-foot strip. Michelle Bryer, who mowed the lawn for Jill Coffin's mother during the early 1990s, testified credibly that she had been instructed where to mow and had not mowed the disputed 10-foot strip. In 2001 the Coffins filed a permit application with the Town of Harpswell that included a sketch of their property that did not include the disputed strip. Finally, the court finds that on one occasion in approximately 2003 George Coffin initially

[2] Johnson acquired title to her property in 2000 from her mother. Her parents obtained the property in 1971, and her mother became the sole owner when her father died in 1999.
[3] The mailbox that had been placed in the strip by Coffin's family was removed in approximately 1974. Before that the court finds that it had been in place for approximately 15 years.

complained that Wanda Johnson's boyfriend was mowing on his property but subsequently did some measurements and acknowledged to Wanda Johnson that the disputed strip was her property.[4]

Based on this evidence, the court concludes that the Coffins also did not meet their burden of demonstrating that their activity on the disputed strip was under a claim of right. Striefel, 1999 ME 111 ¶ 14, 733 A.2d at 991-92.


2. Prescriptive Easement

To establish that a party has acquired a prescriptive easement, the party must prove continuous use for at least twenty years, under a claim of right adverse to the owner, and with the owner's knowledge and acquiescence or with a use so open, notorious, visible, and uninterrupted that knowledge and acquiescence will be presumed. Androkites v. White, 2010 ME 133 ¶ 14, 10 A.3d 677, 681; Glidden v. Belden, 684 A.2d 1306, 1317 (Me. 1996).

The prescriptive easement claimed by the Coffins over Linwood Lane is based on their use of that lane to access the area at the rear of their property where a trailer is now located. That trailer was placed there in 1993, and the evidence established that another trailer had been previously located in the same vicinity during the 1970s and early 1980s.

The evidence established that in January 2005 Wanda Johnson had given a notice to the Coffins that was designed to prevent the acquisition of an easement over

---

[4] More recently, relations between the parties have deteriorated. Johnson placed some no trespassing signs on her boundary, and Jill Coffin pulled them out. Johnson thereafter placed some railroad ties to mark the boundary but George Coffin moved them. These events support the conclusion that in the recent past both parties have attempted to exert control and dominion over the disputed area.

4

Linwood Lane. Plaintiff's Ex. 4.[5] Assuming that the 2005 notice was sufficient to establish non-acquiescence as of that date, the Coffins must show that they had established a prescriptive easement through continuous use during the period from 1985 to 2005.

However, because Johnson did not offer evidence that the notice was posted or served on the Coffins as set forth in 14 M.R.S. § 812, see n. 4 above, the court concludes that the notice was insufficient to prevent the Coffins from acquiring an easement after January 2005.[6] This does not affect the outcome of the prescriptive easement issue because, even if Plaintiff's Exhibit 4 were deemed sufficient to stop the clock as of January 2005, the court concludes that the Coffins have proven by a preponderance of the evidence that they and their predecessors in title had by that time already established a prescriptive easement to travel over Linwood Lane in order to access the rear of their property.

Specifically, the photographic evidence and Jill Coffin's testimony establishes that both before and during the 20-year period prior to January of 2005, her family had driven vehicles down Linwood Lane and then proceeded to turn left on a gravel drive that crosses the 10 foot wide strip and proceeds across the rear of the Coffin property. The gravel drive in question is shown on the 1999 survey that is in evidence as Pltfs. Ex. 9 and was fully established at least as early as 1960. Defts. Ex. 5. Coffin's grandparents parked cars and stored boats at the rear of the Coffin property, see, e.g., Defts Ex. 8, and

---

[5] Although that notice is addressed "to the public," the evidence did not establish how widely it was distributed or whether Johnson had posted it as required by 14 M.R.S. § 812. The evidence also did not establish that the notice was served on the Coffins in the manner prescribed by § 812. However, it is undisputed that the Coffins received a copy.

[6] The evidence also established that the Coffins disregarded Johnson's notice and continued to use Linwood Lane for access exactly as they had in the past. Unless the notice is deemed to preclude any subsequent acquisition of a prescriptive easement, therefore, the Coffins' disregard of the notice supports the claim that they were using Linwood Lane under a claim of right.

they accessed the area where they parked cars and stored boats by traveling down Linwood Lane to the gravel drive.

As noted above, Coffin placed a trailer at the rear of her property in 1993 at the same location where her family had previously placed a trailer in the 1970s and 1980s, and the Coffin family has used Linwood Lane to reach those trailers. Even during the times when there has been no trailer at the rear of the Coffin property, the photographic evidence indicates that the gravel drive remained in place and did not appear to have fallen into disuse. See Defts. Ex. 10. This corroborates Jill Coffin's testimony that her family continuously used Linwood Lane to access the gravel drive at the rear of her property.

There was evidence that prior to 2002, when Linwood Lane was refinished, the portion of Linwood Lane used by the Coffins was not always in the best of shape and that during the winter Linwood Lane has sometimes been blocked by snow or has barely been passable. However, the court finds that the Coffins' use of Linwood Lane when it was not impassable during the winter was under a claim of right and was sufficiently continuous, open, notorious, visible, and uninterrupted to establish a prescriptive easement to travel along Linwood Lane in order to access the gravel drive at the rear of their property. The same evidence also necessarily establishes that the Coffins have a prescriptive easement to travel over that portion of the gravel drive that is located on Wanda Johnson's property and that crosses the 10-foot wide disputed strip.

Because the Coffins have a private prescriptive easement over Linwood Lane for the limited purpose of accessing the gravel drive at the rear of their property, the court does not need to consider their alternative contention that there is a public easement over Linwood Lane.

3. <u>Relief</u>

In light of the court's finding that the Coffins have not acquired title to the disputed 10-foot strip by adverse possession, title to that strip remains with Johnson and certain of the George Coffin's actions (notably, the removal of the railroad ties) constituted trespass. The continued presence of the Coffins' utility pole in the disputed strip also constitutes a trespass.

In her written closing argument Johnson seeks declaratory relief and injunctive relief (1) requiring the Coffins to replace a survey pin that has apparently disappeared , (2) requiring the Coffins to relocate their utility pole at their own expense, and (3) requiring George Coffin to replace the railroad ties in their original position. The evidence as to the missing survey pin was scant and did not establish that George or Jill Coffin removed the pin. The court also will not require George Coffin to replace the railroad ties in their original position because that would require him to enter onto Johnson's land and might lead to a dispute as to whether the ties have been correctly replaced. On those issues the court will limit itself to issuing injunctive relief that defendants shall leave undisturbed any boundary markers or railroad ties that either presently exist on the boundary of the disputed strip or that may be placed on that boundary in the future. The court will order the relocation of the Coffins' utility pole.

Accordingly the court orders and declares as follows:

1. The boundary line between the property of plaintiff Wanda Johnson and defendants George and Jill Coffin is as shown on a 1999 survey by Brian K. Johnson (Plaintiff's Ex. 9), updated in 2009 for recording

purposes and recorded in the Cumberland County Registry of Deeds at Plan Book 210, Page 20.

2. Judgment is entered against defendants George and Jill Coffin on their claim that they have acquired title to a 10-foot strip of land adjoining the northern boundary of their land by adverse possession.

3. Defendants George and Jill Coffin have a prescriptive easement over Linwood Lane from Route 24 running approximately 135 feet to the junction of a gravel drive along the western boundary of the Coffin property, as shown on Plaintiff's Exhibit 9. A prescriptive easement also exists over the portion of the gravel drive that is located on Wanda Johnson's property. That easement shall be limited, however, to the right to travel over Linwood Lane and the portion of the gravel drive belonging to Wanda Johnson in order to access the portion of the gravel drive that exists on the Coffin property.

4. Defendants George and Jill Coffin are ordered not to disturb any boundary markers or railroad ties that either presently exist on the southern boundary of Wanda Johnson's property, as determined in paragraph 1 above, or that may be placed on that boundary in the future.

5. In the absence of written permission from Wanda Johnson, defendants George and Jill Coffin are ordered not to enter onto the property of Wanda Johnson as determined in paragraph 1 above except that they may travel on the prescriptive easement set forth in paragraph 3 for the purpose specified in that paragraph.