## BETHUM *v.* TURNER.

The Selectmen of a town have no authority by law to lay out a public landing, or place for the deposit of lumber.

A general usage, like that of depositing lumber on the banks of a river, not accompanied by a claim of title, or an intention of occupying the land to the exclusion of the owner's rights, cannot furnish any legal presumption of a grant.

THIS was an action of trespass *quare clausum fregit*, to which the general issue was pleaded, with a reservation of liberty to give any special matter in evidence. At the trial of this issue before WILDE J. at the last *September* term in this county, a verdict was taken for the plaintiff, for nominal damages, by consent of the parties, subject to the opinion of the whole Court upon the following facts which appeared in evidence.

The facts stated in the declaration were admitted to be true. But the defendant proved that at the time of the alleged trespass, and for more than thirty-five years previous, there had existed a public highway leading from *Dudley's* mills in *Pittston*, through and over the *locus in quo* which fronts on the eastern side of *Eastern* river:—that after entering upon the plaintiff's close by the highway, it had been customary for the inhabitants of *Pittston*, having occasion, to proceed with their teams and lumber from the highway to a place on the east bank of the river which had been used by the inhabitants during the above period, as a landing place for their boards and other lumber;—that there were no definite limits to the passage-way between the highway and the river; but that immediately after leaving the highway, it had been the practice of the inhabitants

Bethum *v.* Turner.

to turn to the right or left, as most convenient to deposit their lumber on the bank of the river. No definite limits were proved to any particular landing place, but it appeared that it had been usual for the inhabitants to deposit their lumber four or five rods above the plaintiff's north line, along the front of his close, a distance of nearly forty rods. It was also proved that the *locus in quo* was owned by persons residing out of this State, until *May* 7, 1818, previous to which time it was neither improved nor fenced :—that nearly the whole front of the close had been used as a landing place more than twenty years previous to the alleged trespass :—that it had been customary for the inhabitants to turn off from the highway by various passages, and to deposit their lumber at various places, on the plaintiff's close :—and that there were four other places on the same great lot of which the plaintiff's close was a part, and within one mile of said close, which were denominated public landing places, and had been used as such for the last twenty years. It also appeared that the Selectmen of *Pittston*, by direction of the inhabitants, laid out a landing place on the plaintiff's close in the year 1804, which included the place where the lumber in question was deposited :—and that the path by which the defendant conveyed his lumber from the highway to the landing place was an ancient path or cart-way, having been used as such for more than thirty years past.

*Bond*, for the defendant, argued from the tenth article of the Declaration of rights in the Constitution of *Massachusetts*, that the plaintiff's land was lawfully appropriated by the Selectmen of *Pittston* in 1804, to a public use. The power, it is true, is not expressly given to Selectmen ; but several statutes seem to contemplate its existence, and it is most beneficial to the public that such power should exist. Landing places for the deposit of lumber are as necessary as highways ; and the right of conveying property on our numerous rivers will be rendered of little value, if the owner must become a trespasser as soon as he lands it on the bank.

[*Mellen C. J.* Suppose, for the sake of argument, that such a right exists in the Selectmen, yet this case does not find a legal exercise of the right, as the laying out was never accepted by the town.]

Bethum *v.* Turner.

*Bond.* The case finds a public highway or landing-place *de facto ;* and for such highways, when out of repair, the towns are indictable. The citizen has no means of knowing whether such places are legally appropriated to the public use or not, and therefore is not to be regarded as a trespasser for passing over them. *Aspenwall v. Brown,* 3 *D & E.* 265.

The easement claimed by the inhabitants of *Pittston* has been used by them thirty-five years. But the use of such a privilege twenty years supposes a grant; *Strout v. Berry,* 7 *Mass.* 385. 3 *Saund.* 175. *in notis.* *Holcroft v. Peale,* 1 *Bos. & Pul.* 400. *Daniel v. North,* 11 *East* 374. *Read v. Brookman,* 3 *D. & E.* 151. *Peake's Ev.* 326. and this in cases of private rights, where every party must be supposed to know the origin and extent of his title; *à fortiori* it ought to avail the public, who, finding an open highway, have a right to suppose it legally laid out.

It appears farther that the plaintiff's close was an uncultivated waste, of which, in order to maintain this action, he ought to have taken some visible possession, inconsistent with the continuance of the usage stated. *Bro. Trespass pl.* 365. *Roll. Abr.* 553. *Durand v. Child,* 2 *Bulstr.* 157. *The King v. Russell,* 6 *East* 427. The defendant was as justifiable in using the landing, as in travelling over any highway used freely by the public, but not legally laid out.

*Allen,* for the plaintiff.

The facts stated in the declaration being admitted to be true, the action is maintained unless the defendant has shown something to avoid it. He does not claim a private easement, used by himself only for more than twenty years ; but asserts a privilege in the citizens at large. He does not claim a right of way by grant, nor by prescription, nor from necessity ; but founds his right in the existence of a way *de facto.* If these facts were stated in a special plea, by what rule of law could it stand ? The existence of such a way presupposes no length of duration. It may have been but for a day, and therefore not immemorial. Nor is it a sufficient justification for the defendant to say that many others have used the same landing place. Such a defence is in the nature of a custom, yet it is not alleged to be universal. *Wilkes v. Broadbent,* 1 *Wils.* 63.

If it may be argued, that the land having been so long dere-

lict, shews an intention in the owner to surrender it for public uses; yet the argument does not apply to the present case, the land never having been reclaimed from a state of nature.

There are modes provided by law for laying out highways where necessary; and the defendant has only to apply for one, and if expedient, it will be granted. But there is no law authorizing the laying out of a *landing place :* and if there were, the application to the selectmen negatives the idea of any prior grant or right by prescription; for if the inhabitants had the right of way already, they would not have applied for the laying out of a way *de novo.*

MELLEN C. J. delivered the opinion of the Court.

In this case a new trial is moved for, on two grounds;— 1. that the *locus in quo* is a public landing, in virtue of a location of it for that purpose in the year 1804 by the Selectmen of the town of *Pittston :*—2. that after the lapse of thirty-five years, during which time it is said to have been actually used as a public landing, a grant ought to have been presumed to have been made of it for that purpose: in either of which cases it is contended that a verdict should have been returned in favour of the defendant.

As to the *first* point, we know of no authority given by law to the Selectmen of towns to lay out public landings. The constitution provides that private property may be taken for public purposes in certain cases, on payment of an equivalent therefor; but the mode of proceeding is to be designated by law. The legislature, and not a board of selectmen, or the inhabitants of a town, are to decide as to the cases in which this power is to be exerted, and the manner of using it. In certain cases the legislature has exercised this authority, as in the case of public highways, &c. But even if selectmen had the power contended for, as in the case of town roads, it does not appear that the location of the landing in the present case was ever *approved* by the town and accepted by them, as is necessary in the case of town ways.

As to the *second* ground of the motion, it is necessary to attend to some facts in the report of the Judge respecting the ownership of the *locus in quo,* the former owners of it, and the

Bethum *v.* Turner.

situation of the adjoining lots. It appears that there is a highway leading to the river through and over the land in question ; that there were no definite limits to the supposed public landing ; that it was usual for any persons to deposit their lumber on the lot adjoining the plaintiff's for many rods on the bank of the river ; that within one mile of the disputed close there were four other places denominated public landings and used as such; and that until a few months before the commencement of the present action the *locus in quo* was owned by persons not inhabitants of this State. Under these circumstances the land now belonging to the plaintiff was used as a public landing; and this user is urged as the foundation of a legal presumption that the place in question had formerly been granted as a public landing.

Numerous cases have been cited by the counsel for the defendant to establish this position, and shew that grants have been presumed after a user of little more than twenty years. With respect to these cases it may be remarked that they relate to claims of a private nature—of privileges or easements enjoyed by individuals—cases in which there was an exclusive enjoyment of the easement on the one side, and a knowledge of it and assent to it on the other.

In order to ascertain the nature of this kind of presumption, we must look to the reason of it. It is founded on *implied consent.* Thus if *A.* for a series of years permits *B.* to pass over his land, and makes no objection to it, it is presumed that this enjoyment is rightful ; and if the user be continued a sufficient length of time, the legal presumption will be that *A. granted* the easement to *B.*—after which *A.* shall not disturb *B.* in this enjoyment.

Generally speaking, the cases in the books relating to this subject cannot be safely applied to lands a great portion of which has never been improved,—where proprietors reside at a distance ;—where settlements are made on small portions of large lots, without the knowledge of the owners, or any claim of title on the part of the settler ;—or where the usages of the country are such as to collect people near the margin of a river for the more easy transportation or more ready sale of their lumber ;—and where the persons thus resorting have no inten-

tion to appropriate the banks of the river to any other than a temporary use, on account of the facilities thus furnished.

In *England*, where the decisions alluded to were made, the lands generally are under improvement, under the inspection of some landlord or his agent, where any encroachments on the land, or improper appropriation of it, must be known. There, if undue indulgence is shewn, and these encroachments acquiesced in, there is room for presumptions of consent, or of a grant, to be allowed against those who will not guard their estates and protect them from legal conclusions affecting their rights. But the manner in which the shore of the river, in the present case, has been used, shews the intention of those who have used it for the purposes which have been mentioned. Several landings of the same kind being thus used, we cannot consider the user as any claim of right, or as intended to prejudice the rights of the true owner. For as a man ought not to be considered as disseized until he has the means of knowing that a person has unlawfully entered into his lands and claims to hold them adversely; so no man can be considered as a disseizor, unless by election, whose possession was not really adversary. And for the same reason a usage like that of depositing lumber on the banks of a river, when the usage is general, and not accompanied by a claim of title, or an intention of appropriating the soil to the exclusion of the owner's rights, cannot furnish any legal ground for the presumption of a grant.

It has been urged that the plaintiff cannot maintain this action, not being in possession. But it is clear that the plaintiff has never been disseized by any of the acts stated in the report. To constitute such a disseizin, the land must have been inclosed by a fence, by persons claiming to hold the land adversely to the owner.

On the whole, we are all satisfied that for the reasons which have been stated the action is well maintained, and that there must be

*Judgment on the verdict.*