Mary E. ROBBINS, et al.

v.

GREAT NORTHERN PAPER COMPANY.

Supreme Judicial Court of Maine.

Argued Jan. 12, 1989.

Reargued March 13, 1989.

Decided April 13, 1989.

C. Bradley Snow (orally), Tanous & Snow, East Millinocket, for plaintiffs.

Steven J. Mogul (orally), Gross, Minsky, Mogul & Singal, P.A., Bangor, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

COLLINS, Justice.

The plaintiffs, Mary E. Robbins, individually, and as the personal representative of the estate of her deceased husband, George A. Robbins (Robbins), and Ryan Robbins, their son, appeal from the summary judgment entered for the defendant, Great Northern Paper Company (Great Northern), in the Superior Court (Penobscot County; *Smith, J.*). We affirm the judgment.

## I.

During 1983, Robbins had an agreement with Great Northern for the lease of a lot on the shore of Shad Pond for the annual rental fee of $95.00 a year. The lease provided in pertinent part that Robbins could erect, occupy, and use a building "only for noncommercial recreational purposes"; that the "premises will not be used as a legal or year-round residence"; and that Robbins had "the right to pass over other lands of Great Northern in going to or from the leased land." Great Northern, as well as Robbins, reserved the right to cancel the lease by giving written notice at least 30 days prior to any June first.

On June 15, 1983 Robbins was operating a motor vehicle, in which his minor son, Ryan, was a passenger, on a road on property owned by Great Northern for the purpose of delivering a couch to his camp located on the leased property. The road crosses over the West Branch of the Penobscot River. Great Northern regulates the flow and level of the river.

The plaintiffs in their complaint alleged, *inter alia*, that Robbins drowned and Ryan was injured when Robbins attempted to cross part of the road that, although normally either dry or with little water, was flooded by the river because the gates of Great Northern's dam were open, and sought damages for the negligent failure of Great Northern to warn Mr. Robbins of the high water level. Great Northern by its answer set forth in 14 M.R.S.A. § 159–A (1980 & Supp.1988), the statute limiting liability for recreational or harvesting activities, as an affirmative defense to the plaintiffs' claims. After discovery was completed, Great Northern filed a motion for summary judgment on the basis of the limited liability protection provided by section 159–A(2) and (3).

After a hearing, the trial court determined that the plaintiffs did not claim a wilful or malicious conduct of defendant as required by 14 M.R.S.A. § 159–A(4)(A); that Robbins was engaged in a recreational activity at the time of his death; and that the annual payments made by Robbins to Great Northern did not constitute consideration within the meaning of 14 M.R.S.A. § 159–A(4)(B), stating an exception to the recreational immunity rule. The court granted Great Northern's motion for summary judgment, and the plaintiffs appeal.

## II.

14 M.R.S.A. § 159–A provides in pertinent part:

**2. Limited duty.** An owner, lessee or occupant of premises shall owe no duty of care to keep the premises safe for entry or use by others for recreational or harvesting activities or to give warning of any hazardous condition, use, structure or activity on these premises to persons entering for those purposes.

**3. Permissive use.** An owner, lessee or occupant who gives permission to another to pursue recreational or harvesting activities on the premises shall not thereby:

A. Extend any assurance that the premises are safe for those purposes;

B. Make the person to whom permission is granted an invitee or licensee to whom a duty of care is owed; or

C. Assume responsibility for or incur liability for any injury to person or property caused by any act of persons to whom the permission is granted.

14 M.R.S.A. § 159–A(2), (3) (1980).

"Recreational or harvesting activities" shall mean recreational activities conducted out of doors, including hunting, fishing, trapping, camping, hiking, sightseeing, operation of snow-traveling and all-terrain vehicles, skiing, hang-gliding, boating, sailing, canoeing, rafting or swimming or activities that involve harvesting or gathering forest products. It shall include entry, use of and passage over premises in order to pursue these activities.

*Id.* § 159(1)(B) (Supp.1988). The statute further sets forth exceptions to the limited liability. Section 159–A(4), in relevant part, states:

4. **Limitations on section.** This section shall not limit the liability which would otherwise exist:

A. For a wilful or malicious failure to guard or warn against a dangerous condition, use, structure or activity;

B. For an injury suffered in any case where permission to pursue any recreational or harvesting activities was granted for a consideration other than the consideration, if any, paid to the landowner by the State[.]

In their appeal from the grant of a summary judgment to Great Northern, the plaintiffs contend that the trial court erred in each of its determinations. Accordingly, we examine the record, viewing the evidence in the light most favorable to the plaintiffs and review the trial court's conclusions for errors of law. *Philbrook v. Gates Formed–Fibre Products, Inc.,* 536 A.2d 1118, 1119 (Me.1988).

In their complaint the plaintiffs raised only issues of negligence. The affidavits submitted by the plaintiffs in opposition to Great Northern's motion for summary judgment do not allege or suggest any wilful or malicious conduct on the part of Great Northern. Accordingly, we find no merit in the plaintiffs' contention that the evidence before the trial court raised a genuine issue of material fact as to whether the actions of Great Northern had been wilful or malicious. *Jordan v. H.C. Haynes, Inc.,* 504 A.2d 618, 619 (Me.1986); 14 M.R.S.A. § 159–A(4)(A).

■ The plaintiffs next contend that the trial court erred in holding that at the time of his death Robbins was engaged in a recreational activity as defined by section 159–A(1)(B).

It is undisputed that on June 15 Robbins was travelling on the property of Great Northern for the purpose of delivering a couch to his camp located on the leased property. The camp, pursuant to the terms of the lease, was used purely for recreational purposes. The unambiguous language of the statute defining "recreational or harvesting activities" as "recreational activities conducted out of doors" and "shall include entry, use of and passage over premises in order to pursue these activities" goes far in resolving this question of statutory interpretation. *See Stanley v. Tilcon Maine, Inc.,* 541 A.2d 951, 952 (Me.1988). We agree with the holding of the trial court that furnishing the camp was an action in pursuit of the use of the camp by Robbins for hunting and fishing and that his travel over the property to deliver a couch to his camp is within the statutory definition of recreational activities. 14 M.R.S.A. § 159–A(1)(B).

■ Finally, the plaintiffs contend that the trial court erred in determining that the annual payments to Great Northern were not "consideration" within the meaning of section 159–A(4)(B). Because we construe the immunity provision of section 159–A broadly, we interpret the "for consideration" exception to the provision narrowly. *Cf. Noel v. Town of Ogunquit,* 555 A.2d 1054 (Me.1989); *Moffett v. City of Portland,* 400 A.2d 340, 348 (Me.1979) (construing the Freedom of Access Act liberally and thus any exceptions narrowly).

■ One of the purposes of the limited liability rule of the recreational use statute

is to encourage landowners to allow recreational use of the Maine woodlands that are rich with opportunities for hunting, fishing, and other recreational activities. *Noel v. Town of Ogunquit*, at 1056 (citing *Stanley v. Tilcon Maine, Inc.*, 541 A.2d 951, 953 (Me.1988)). Section 159–A(4)(B) provides an exception to this limited liability rule for injuries suffered in cases where *"permission* to pursue recreational activities *was granted for consideration."* (emphasis added). In the present case, Great Northern charges no fee to the general public to use its lands, streams, lakes and roads for recreational activities. The $95 paid by Robbins represents a fee for his right to use the leased lot for certain purposes. It does not entitle him, however, to a greater right than that held by the general public to pursue recreational activities on lands other than this lot. As the Supreme Court of Nebraska noted in a case similar to the one at hand:

> Consideration should not be deemed given ... unless it is a charge necessary to utilize the overall benefits of a recreational area so that it may be regarded as an entrance or admittance fee.

*Garreans By Garreans v. City of Omaha,* 216 Neb. 487, 345 N.W.2d 309, 314 (1984) (quoting *Moss v. Dept. of Natural Resources,* 62 Ohio St.2d 138, 142, 404 N.E.2d 742, 745 (1980)). *See also Schiller v. Muskegon State Park,* 153 Mich.App. 472, 395 N.W.2d 75 (1986) (finding that park permit fee paid by patron was for use of roads and parking lots of park and not consideration for use of park). To hold otherwise would undermine the very goal sought to be advanced by the Legislature.

The entry is:

Judgment affirmed.

McKUSICK, C.J., and WATHEN and CLIFFORD, JJ., concur.

GLASSMAN, Justice, with whom ROBERTS and HORNBY, JJ., join, dissenting.

I respectfully dissent. I agree with the court that no questions of fact exist as to whether Great Northern's conduct was wilful or malicious or whether Robbins was engaged in a recreational activity at the time of his death. I cannot agree, however, that the $95 annual rental fee paid by Robbins to Great Northern for the lease of a lot and "the right to pass over other lands of the lessor in going to or from the leased land" does not constitute "consideration" within the meaning of section 159–A(4)(B).

The court's reliance on *Noel v. Town of Ogunquit,* 555 A.2d 1054 (Me.1989), and *Moffett v. City of Portland,* 400 A.2d 340 (Me.1979), to support its narrow interpretation of the consideration exception is misplaced. In *Noel* we determined that the municipality's immunity, if any, in its ownership and operation of a public beach was governed by the provisions of 14 M.R.S.A. §§ 8101–8118 (1980 & Supp.1988) and not by 14 M.R.S.A. § 159–A. We did not discuss whether the language in section 159–A should be given a "broad" or "narrow" interpretation. Our decision was based solely on the well-established rule that statutes must be construed in connection with all pertinent statutes in order to reach the harmonious result intended by the legislature. *Noel v. Town of Ogunquit,* 555 A.2d at 1056. In *Moffett* we held that the corollary to the statutory mandate that the Freedom of Access Act be liberally construed "is necessarily a strict construction of any exceptions" contained in the Act. *Moffett v. City of Portland,* 400 A.2d at 348. Here there is no such statutory mandate. Since the recreational land use statute limits the common law tort liability landowners have toward licensees, *see Poulin v. Colby College,* 402 A.2d 846, 851 (Me.1979) (court abolished distinction between licensees and invitees and held that "owner or occupier of land owes the same duty of reasonable care in all the circumstances to all persons lawfully on the land"), the statute should "be construed to alter the common law only to the extent that the Legislature has made that purpose clear." *Emery Waterhouse Co. v. Lea,* 467 A.2d 986, 996 (Me.1983); *see also Ducey v. United States,* 713 F.2d 504, 510 (9th Cir.1983) (Because the recreational use statute limits common law tort liability, the

consideration exception "must be given the broadest reading that is within the fair intendment of the language used."); *Copeland v. Carson*, 46 Wis.2d 337, 347, 174 N.W.2d 745, 749 (1970).

Section 159–A(4)(B) provides that the provisions of section 159–A shall not limit the liability that would otherwise exist "[f]or an injury suffered in any case where permission to pursue any recreational or harvesting activities was granted for a consideration...." 14 M.R.S.A. § 159–A(4)(B). The term "consideration" is not defined in the statute.[1] It is a fundamental rule of statutory construction that, "Words which are not expressly defined in the applicable statute must be accorded their plain and common meaning and should be construed according to their natural import." *Brousseau v. Maine Employment Sec. Comm'n*, 470 A.2d 327, 330 (Me.1984), *cited in State v. Maine Cent. R.R.*, 517 A.2d 55, 57 (Me. 1986). Although the court applies this rule in its interpretation of "recreational or harvesting activities," the rule is ignored in its interpretation of the term "consideration." *See also Stanley v. Tilcon Maine, Inc.*, 541 A.2d 951, 953 (Me.1988) (court using plain meaning rule for interpretation of language in section 159–A).

The provision in the lease agreement between Robbins and Great Northern that granted permission to Robbins to pursue the recreational activity of traveling to his camp "over other lands of the lessor" was in partial exchange for the annual payments of $95.00 made by Robbins to Great Northern. Great Northern and Robbins determined the scope of their lease agreement and how much it was worth. They decided that the provision for entry over Great Northern's lands was important enough to include as a specific entitlement under the lease even though Great Northern generally makes its land open to the public for recreational activities. We are in no position to say that Robbins would have leased the camp without the guaranteed right of access. They also decided that $95 was the appropriate annual payment for the lease, rather than $9.50 or $950. Clearly that payment was both a benefit to Great Northern[2] and a detriment to Robbins within the common and ordinary meaning of those words as used in the definition of "consideration." *See Kennebunk Sav. Bank v. West*, 538 A.2d 303, 304 (Me.1988) ("Consideration can either be a benefit to the promisor or a detriment to or forbearance by the promisee."); *Black's Law Dictionary* 277 (5th ed. 1979) (consideration defined as "[s]ome right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility, given, suffered, or undertaken by the other").

I am further disturbed that the court relies on the fact that "Great Northern charges no fee to the general public to use its lands, streams, lakes and roads for recreational activities" for its determination of the applicability of the limited liability provided in section 159–A. The court's statement that by virtue of the lease agreement Robbins had no greater right than the general public is patently contrary to the express terms of the lease. The lease granted to Robbins "the right to pass over other lands of [Great Northern] in going to or from the leased land" on which he had also been granted the right to construct and use a recreational residence. For the

---

1. The case law from other jurisdictions relied on by the court is inapplicable because these courts were interpreting statutes significantly different than the statute at issue here. *See, e.g., Garreans v. City of Omaha*, 216 Neb. 487, 491, 345 N.W.2d 309, 313 (1984) (Clear and unambiguous meaning of statute defining term "charge" as "'the amount of money asked in return for an invitation to enter or go upon the land'" is "that *in order* to constitute a charge, any moneys paid must be paid for the right to enter the facility.") (quoting Neb.Rev.Stat. § 37–1008 (1988)); *Moss v. Department of Natural Resources*, 62 Ohio St.2d 138, 142, 404 N.E.2d 742,

745 (1980) (plaintiffs' payments of consideration in exchange for gas, food or canoe rental did not cause them to fall within definition of "recreational user" which is "one who has permission *to enter* upon 'premises' without the payment of a fee or consideration") (emphasis in original).

2. The land use manager for Great Northern stated by affidavit that the consideration was designed "to cover administrative costs and real estate taxes." That is certainly an economic benefit to Great Northern.

term of their lease Great Northern could not exclude Robbins from travelling over Great Northern's land in going to and from his recreational residence. To the contrary, any use of Great Northern's land by the general public is within the sole control of Great Northern and can be limited or prohibited by it at any time.

Because the use of the land by Robbins at the time of his death was directly within the terms of the lease for which he paid consideration, I would conclude that the trial court erred in its determination that the payments made by Robbins to Great Northern did not constitute consideration within the purview of 14 M.R.S.A. § 159–A(4)(B). Contrary to the court's holding, the legislative goal of the statute is clearly articulated in the statute as it relates to the facts of this case: If Great Northern will open its land to recreational use by the public without any payment of consideration to it, it will not be liable in damages for injuries occurring to any member of the public while on the land; however, if Great Northern requires that any consideration be paid to it for such recreational use by any member of the public, as to that paying member, Great Northern will be liable under the common law principles governing landowner and licensee. The express provision in the statute distinguishing Great Northern's liability to Robbins from that to the general public cannot be said to defeat the purposes of the statute. I would vacate the judgment of the Superior Court.