2002 ME 137

Edwin LYONS et al.[1]

v.

BAPTIST SCHOOL OF CHRISTIAN TRAINING

Supreme Judicial Court of Maine.

Argued: April 4, 2002.
Decided: Aug. 16, 2002.

---

1. Other plaintiffs in this action include Nancy

Lyons, Eugene Weaver, Lorraine Weaver,

Thomas Kaiser, Steven Kaiser, Edward Bree- den and Larry Gardiner.

Alan F. Harding, (orally), Hardings Law Offices, Presque Isle, for plaintiffs.

Kathleen T. O'Boyle, (orally), Presque Isle, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

Majority: SAUFLEY, C.J., and DANA, ALEXANDER, LEVY, JJ.

Dissent: CLIFFORD, RUDMAN, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] The Baptist School of Christian Training appeals from a judgment entered in the Superior Court (Aroostook County, *Hjelm, J.*) after a nonjury trial finding that a public, prescriptive easement exists across the Baptist School's property located in the Town of Chapman. The Baptist School argues that the Superior Court erred in finding a public, prescriptive easement because there is insufficient evidence of adversity and because the court did not apply Maine's presumption of permissive use regarding recreational uses of open lands. We vacate the Superior Court's judgment because the record fails to support the finding of adversity necessary to establish a public, prescriptive easement.

## I.  CASE HISTORY

[¶ 2] For the past fifty years, the Baptist School has owned a lot consisting of approximately 150 acres of mostly wooded land in the Town of Chapman (Chapman lot). The Chapman lot adjoins another

large lot owned by the Baptist School in the Town of Mapleton (Mapleton lot). Until the 1940s, there was a residence on the Chapman lot, and four to six acres of the Chapman lot immediately abutting the Mapleton lot were cultivated for potatoes and other uses. Only a foundation remains today, and the formerly cultivated areas are now significantly overgrown. Beginning in the 1950s, the Baptist School developed and expanded a summer camp for children on the Mapleton lot, constructing a number of buildings and open areas for camp activities and recreation.

[¶ 3] The Baptist School's properties are accessed from the Carvel Road, a public way, onto the Baptist Park Road. The Baptist Park Road runs through the Mapleton and Chapman lots and has provided access to other properties south of the Chapman lot and to the Presque Isle Stream. The portion of the Baptist Park Road within the Town of Mapleton is a public way maintained by the Town of Mapleton. The Town of Chapman has not been involved in maintaining the portion of Baptist Park Road within the Town of Chapman. There is no evidence that, within the Town of Chapman, the Baptist Park Road exists as anything other than a private way across the land of the Baptist School and other owners within the Town of Chapman.

[¶ 4] The programs on the Baptist School's property have expanded considerably in recent years from approximately 200 campers in the mid–1950s to nearly 1000 campers in the year 2000. In addition, the nature of the programs has expanded from weekly summer camp offerings for children to larger weekly camp sessions in the summers. There are also weekend sessions for children and adults at other times of the year. Most of the camp-related activities have been conducted on the Mapleton lot. In the past several years, however, the Baptist School has added an archery course, a climbing wall, and trails for cross-country skiing and mountain biking that use the Chapman lot. With permission, the cross-country skiing and mountain biking trails extend onto a neighboring property.

[¶ 5] In 2000, after increasing concern about abusive uses of their property by all-terrain vehicles and large-tire, four-wheel drive vehicles, the Baptist School placed a barrier across the Baptist Park Road. Initially, this barrier was placed across the road on the Mapleton lot. Later, because the road on the Mapleton lot is a public way, the barrier was moved back to the Chapman line. The plaintiffs, all of whom own property in the vicinity of the Baptist School, then brought suit alleging that a public easement by prescription had been established on the portion of the Baptist Park Road located on the Chapman lot.

[¶ 6] At trial, twelve witnesses testified, including six of the plaintiffs: Thomas Kaiser, Steven Kaiser, Eugene Weaver, Edward Breeden, Edwin Lyons, and Larry Gardiner. Also testifying for the plaintiffs were five area residents, John Edgecomb, Fernald Garland, Ronald Carney, Keith Condon, and Shane Thomas. In addition, the Baptist School President, Raymond Todd, testified. Todd, had been associated with the Baptist School since he was a camper in the 1950s.

[¶ 7] All of the witnesses testified that through the years, they and other members of the public frequently used the Baptist Park Road for hunting, fishing, snowmobiling, and other recreational activities as well as to access the Presque Isle Stream and other properties south of the Chapman lot. Among other uses, Eugene Weaver testified that he had owned a bulldozer and would "take it for a walk" on the road, clearing out any blow downs or obstructions as he did so.

[¶ 8] All of the plaintiffs' witnesses testified that they currently or had previously used the road within the Town of Chapman with some frequency and, when they used it, they neither requested permission nor believed they needed to receive permission to use the road.

[¶ 9] Witnesses Garland and Thomas and plaintiff Thomas Kaiser testified that they thought they had a right to use the road. For example, in response to the question, "Did you use it as though you had a right to?" Fernald Garland testified, "Yuh, that's the way I think that it is. I mean, that's the way we always thought it was." Garland and Thomas also testified that if "No Trespassing" signs had been posted, they would have respected the signs, not used the road, and stayed off the property. Witness Carney and plaintiffs Steven Kaiser, Breeden, and Lyons also testified that they would have respected "No Trespassing" signs, had they been posted. Plaintiff Gardiner testified that he believed he could use the property for hunting because Maine did not have a "reverse trespass" law requiring affirmative permission from landowners prior to hunting.

[¶ 10] Several witnesses, Garland, Condon, and Thomas, and plaintiffs Thomas Kaiser, Steven Kaiser, Weaver, and Breeden, acknowledged the existence of a tradition that embodies the belief that people have implicit permission to traverse and use other persons' open fields and woodlands without seeking express permission. That implicit permission for public use continues until explicitly withdrawn by an affirmative act, such as placement of a barrier or "No Trespassing" signs, which would be respected. The following colloquy between counsel for the Baptist School and Fernald Garland reflects the tradition of implicit permissive use:

Q. [W]hen you weren't working and you were on defendant's land, did you feel that you had permission to be on their land?

A. Well ... I just didn't believe that they really minded if people went on there. Through all of the years, people have been going on that piece of ground. That's—I own property too, people go on [my land].... [I]t's just—we live in Aroostook County, and that's the way it is in Aroostook County, but I've never— I've hunted and fished and traveled ... and I never yet have been told to leave a piece of property, ... nor have I asked permission.... [I]ts just the way we are, I guess, and I think its a great way to be.

Q. [S]o I understand, then, that you did not feel you were a trespasser on their property?

A. No sir.

Q. And, you did not feel you were—you were on their property against their wishes?

A. That's true.

[¶ 11] Discussing the Baptist School's position regarding uses of its roadway, Raymond Todd acknowledged that many people used the road over the years and that generally use of the road was allowed without requesting or receiving explicit permission. Todd testified, "We always let people go. We [want to] be good neighbors." Todd did testify that on a few occasions, people making excessive noise or using alcohol during times when camp was in session had been requested to and did leave the property. Todd and several other witnesses also testified that, at one point in 1978, a cable was placed across the roadway. This cable was present a brief period of time, a few days at most, and then was removed. Other than that, there had been no barrier to use of the roadway and no "No Trespassing" signs until placement of the barriers in 2000.

[¶ 12] After trial, the Superior Court found that all of the necessary elements for a public, prescriptive easement had been proven and, accordingly, entered judgment for the plaintiffs. The court's judgment was fairly brief, stating generally the elements necessary to prove a public, prescriptive easement and finding that those elements had been proven. The Baptist School then filed this appeal..

## II. DISCUSSION

[¶ 13] Where a trial court enters a judgment based on findings of fact, and no additional findings of fact are requested pursuant to M.R. Civ. P. 52(a), we will infer that the court made all the necessary findings of fact to support the judgment, if those findings are supported by evidence in the record. *Glidden v. Belden*, 684 A.2d 1306, 1316 (Me.1996); *Blackmer v. Williams*, 437 A.2d 858, 861 (Me.1981). The trial court's explicit and inferred findings of fact will be reviewed for clear error and will be affirmed if there is competent evidence in the record to support the finding of a public, prescriptive easement, even if the evidence might support alternative findings of fact. *Eaton v. Town of Wells*, 2000 ME 176, ¶ 33, 760 A.2d 232, 244.

[¶ 14] Plaintiffs contend that an owner of open fields or woodlands who, over a twenty-year period, knows of and does not object to recreational crossings and/or uses of that land, forfeits a public easement and forfeits the owner's rights to object to a continuation and even an expansion of those uses by the public. Maine's public, prescriptive easement law is not so quick to deprive landowners of rights to control access to their land. The tradition of acquiescence in public access to nonposted fields and woodlands, acknowledged by six of the plaintiffs' witnesses, can, as a matter of law, remain alive and well in comity with Maine law governing public, prescriptive easements.

[¶ 15] The party asserting a public, prescriptive easement must prove: (1) continuous use; (2) by people who are not separable from the public generally; (3) for at least twenty years; (4) under a claim of right adverse to the owner; (5) with the owner's knowledge and acquiescence; or (6) a use so open, notorious, visible, and uninterrupted that knowledge and acquiescence will be presumed. *Id.* ¶ 32; *accord S.D. Warren Co. v. Vernon*, 1997 ME 161, ¶¶ 5, 16, 697 A.2d 1280, 1282, 1284; *Town of Manchester v. Augusta Country Club*, 477 A.2d 1124, 1130 (Me. 1984).

[¶ 16] In this case, there is no serious dispute that the road crossing the Chapman lot was subject to continuous public recreational use for at least twenty years and that this use was known and allowed by the Baptist School until 2000. The question before us is whether that public use was under a claim of right adverse to the Baptist School.

[¶ 17] An essential element of any prescriptive easement claim is "a demonstrated intention by the adverse user to claim title or a right to use property." *Jordan v. Shea*, 2002 ME 36, ¶ 30, 791 A.2d 116, 124; *see also Glidden v. Belden*, 684 A.2d 1306, 1317–18 (Me.1996). Thus, for purposes of creation of a prescriptive easement, a use is adverse to the owner " 'when a party ... has received no permission from the owner of the soil, and uses the way as the owner would use it, disregarding his claims entirely, using it as though he owned the property himself....' " *S.D. Warren Co.*, 1997 ME 161, ¶ 11, 697 A.2d at 1283 (*quoting Blanchard v. Moulton*, 63 Me. 434, 437 (1873)). *Accord Stickney v. City of Saco*, 2001 ME 69, ¶ 21, 770 A.2d 592, 602. We have characterized the type of acts that an adverse

possessor must demonstrate as acts sufficient to give notice to the owner of the adverse claimants' "antagonistic purpose" or "hostile intent." *Emerson v. Maine Rural Missions Ass'n, Inc.,* 560 A.2d 1, 2–3 (Me.1989); *see also Webber v. Barker Lumber Co.,* 121 Me. 259, 264, 116 A. 586, 588 (1922) (hostile intent); *Stewart v. Small,* 119 Me. 269, 271, 110 A. 683, 684 (1920) (antagonistic purpose).

[¶ 18] In cases involving claims of private, prescriptive easements, we have stated that where there has been unmolested, open and continuous use of a way for twenty years or more, with the knowledge and acquiescence of the owner of the servient estate, the use will be presumed to have been adverse and under a claim of right. *Blackmer,* 437 A.2d at 862 (*citing Jacobs v. Boomer,* 267 A.2d 376, 378 (Me. 1970)); *Burnham v. Burnham,* 130 Me. 409, 411, 156 A. 823, 824 (1931). However, application of such a presumption to a public, prescriptive easement claim for recreational uses is inappropriate when that claim applies to open fields or woodlands and the ways traversing them.

[¶ 19] Under our precedents, public recreational uses of unposted open fields or woodlands and the ways through them are presumed permissive. Thus, in *S.D. Warren v. Vernon,* 1997 ME 161, ¶¶ 15–17, 697 A.2d 1280, 1283–84, we affirmed a finding of a private prescriptive easement, but we vacated a finding of a public prescriptive easement based on evidence of use of a way for hunting or recreation, woods work and access by abutting landowners. We held that "use of the road by the public for hunting or recreation is presumed permissive." *Id.* ¶ 17. In *Town of Manchester v. Augusta Country Club,* 477 A.2d 1124 (Me.1984), we addressed a way maintained by the town through a golf course and used by the public for nearly fifty years to access a beach maintained by the country club. We affirmed a trial court finding that a public prescriptive easement was not proven because the evidence was insufficient to "rebut the presumption that such use was permissive." *Id.* at 1130. We also noted that our rule that public recreational uses are presumed to be permissive "is predicated on the notion that such use by the general public is consistent with, and in no way diminishes, the rights of the owner in his land." *Id.* This observation is consistent with the testimony about traditions underlying recreational uses of land that was offered by several of the plaintiffs' witnesses in this case.

[¶ 20] Some of our past decisions may not have been entirely clear as to whether the presumption of permissive use is generated by the public, recreational use itself, or by the nature of the land on which the use occurs, which we have sometimes characterized as "wild and uncultivated." Thus, in *Town of Kennebunkport v. Forrester,* 391 A.2d 831, 833 (Me.1978), we stated that:

> In a consistent line of cases this court has declined to hold that the mere use by the general public of wild and uncultivated land as a route for hauling seaweed, for hunting, or for mere pleasure or recreation, is sufficient to show the adverse [use] essential to create a prescriptive easement.

[¶ 21] In support of this statement, we cited *Piper v. Voorhees,* 130 Me. 305, 312, 155 A. 556, 560 (1931), *Littlefield v. Hubbard,* 124 Me. 299, 304, 128 A. 285, 288 (1925), and *Mayberry v. Inhabitants of Standish,* 56 Me. 342, 353 (1868). In these earlier cases, the issue of use was addressed in the context of land that was variously described as "unenclosed, unim-

proved and unoccupied"[2] or "open and unenclosed."[3] *Littlefield* and *Mayberry* also noted the "trifling value" of the land.[4] However, some of the characterizations of land in these past precedents may be reflective of a tendency to cite phrases from old cases where the issue addressed is not really the land itself, but the use of the land. In *Forrester*, for example, it is doubtful that the land at issue, abutting Ocean Avenue in Kennebunkport, could be characterized as "wild." It certainly would not be of "trifling value." These terms are maintained in the precedents because the significance of the precedents is not what they say about the land, but the principles they establish regarding public, recreational uses of land. Were the law otherwise, with the presumption of permissive use generated by the character of the land rather the public recreational use of the land, the law would invite the perverse result that a public easement claim could fail when land was undeveloped but become viable as land was developed.

[¶ 22] The distinction between focus on land and focus on use is evident in *Town of Manchester v. Augusta Country Club*, 477 A.2d at 1126, 1130, where the principle that public recreational use of land is presumptively permissive was applied to land—a town maintained way through a golf course—that certainly was not wild, or uncultivated or unimproved. Even that case, applying the presumptively permissive use principle to a very different type of land, cites the old precedents from which the principle was derived and their references to "wild and uncultivated" land or land of "trifling value." 477 A.2d at 1130.[5]

[¶ 23] The "wild and uncultivated" terminology was resurrected in *S.D. Warren*, 697 A.2d at 1284, a case involving a maintained roadway crossing defendant's house lot, where we found a private, prescriptive

2. *Forrester*, 391 A.2d at 832.

3. *Littlefield*, 124 Me. at 304, 128 A. 285; *Mayberry*, 56 Me. at 353.

4. *Littlefield*, 124 Me. at 304, 128 A. 285; *Mayberry*, 56 Me. at 353.

5. In *Augusta Country Club*, 477 A.2d at 1129 n. 6 and *Blackmer v. Williams*, 437 A.2d at 862 n. 3 (Me.1981), we raised but did not resolve the question of whether individual plaintiffs, other than a governmental entity, have standing to assert a public prescriptive easement. Thus in footnote 6 to *Augusta Country Club*, we observed:

The threshold dilemma posed by the claim of a public easement is one of standing. 14 M.R.S.A. § 812 is silent as to who may properly represent the public's interest in a suit to establish an easement. In *Blackmer v. Williams*, 437 A.2d 858 (Me.1981), we reserved the question of whether "the public, apart from some legally organized political entity, can lay claim to an easement by prescription." 437 A.2d at 862 n. 3. This issue differs from the one urged by the Attorney General as *amicus curiae*, who we feel misconstrues our discussion in *Blackmer*. The question posed by *Blackmer* is not, as the Attorney General would have it, "whether the public, apart from some legally organized political entity, can *acquire* an easement through prescriptive use," (emphasis added). That issue is long settled in Maine. Rather, the question, to use the language of *Blackmer*, is whether, apart from some legally organized political entity, the public can "lay claim" to such an easement through the use of the courts of this State. In view of our disposition of this case, we need not address the issue reserved in *Blackmer*.

We need not directly address the standing issue here, except to observe that: (1) a public easement could be asserted by an individual as a defense to a trespass action, and (2) a declaratory judgment action, M.R. Civ. P. 57, would appear to be available to private individuals and entities where they have been barred from access to ways on lands that they previously used and, in good faith, believe they can continue to use due to a private or public prescriptive easement. *Cf. S.D. Warren v. Vernon*, 1997 ME 161, 697 A.2d 1280.

easement proven, but we found the evidence of uses of the way insufficient to rebut the presumption that public, recreational uses are permissive. *Id.* Thus, we vacated the trial court's finding of a public prescriptive easement. *Id.*

[¶ 24] These later cases make it evident that it is the public recreational uses of land, not the nature of the land alone, that triggers application of the rebuttable presumption of permissive use in public prescriptive easement cases. The presumption that public recreational uses of open, unposted land are permissive applies equally to children playing on a vacant lot in town, hunters and snowmobilers crossing a cultivated field after the harvest, or families camping on privately owned wood lots, and it applies to the uses testified to by the plaintiffs in this case.[6]

[¶ 25] In this case, the long history of public, recreational uses of the Chapman lot and the way through it, creates a presumption of permissive use, not a presumption of adversity. This presumption of permissive use does not result in burden shifting. It leaves with the plaintiffs the burden of proving adversity through a claim of right hostile to the owner's interest, without benefit of any presumption of adversity arising from long term public recreational uses of the land.

[¶ 26] The plaintiffs must prove that their actions in using the way demonstrated hostility or antagonistic intent in order to impose a public, prescriptive easement and deprive the Baptist School of its capacity to limit use of the property. In the context of an adverse possession or prescriptive easement claim, hostility does not require a "heated controversy or a manifestation of ill will" toward the owner. *Striefel v. Charles–Keyt–Leaman P'ship*, 1999 ME 111, ¶ 13, 733 A.2d 984, 991. But proving the hostile claim of right element does require a showing that the use was: (1) without the express or implied permission of the owner, *id.;* (2) with the intent to displace or limit the owner's rights to the land, *id.* ¶ 14; and (3) undertaken in a manner that provided the owners with "adequate notice … that the owner's property rights are in jeopardy." *Id.* ¶ 11. *See also Emerson*, 560 A.2d at 2–3. To demonstrate adverse use, a claimant must show disregard of the owner's claims entirely and use of the land as though the claimant owned the property. *See Stickney*, 2001 ME 69, ¶ 21, 770 A.2d at 602.

[¶ 27] In this record, there is no evidence of an open and demonstrated hostile intent to limit the Baptist School's rights in the land. A majority of the plaintiffs' witnesses acknowledged the tradition of landowner acquiescence in public recreational uses of open, unposted fields and woodlands. Seven of plaintiffs' witnesses acknowledged that they would have respected no trespassing signs, had they been posted. Even those witnesses who stated that they believed they had a right to use the property, either acknowledged the tradition of acquiescence or acknowledged that they would have respected no trespassing signs had they been posted. None of the witnesses testified to any overt act of hostility that could have placed the Baptist School on notice that the plain-

---

**6.** To promote and continue Maine's tradition of presumptive landowner permission for public access for recreational uses of open fields and woodlands, the legislature has adopted limitations on landowner liability for injuries to the public that may occur in the course of such recreational uses. *See* 14 M.R.S.A. § 159–A (Supp.2001); *Robbins v. Great N. Paper Co.*, 557 A.2d 614, 616–17 (Me.1989) (stating that the purpose of § 159–A "is to encourage landowners to allow recreational use of the Maine woodlands that are rich with opportunities for hunting, fishing, and other recreational activities").

tiffs' use was extending beyond the accepted land use traditions and was seeking to establish a public easement or otherwise limit the Baptist School's capacity to control access to and through its property.

[¶ 28] In these respects, the evidence is very different from the evidence that supported finding a public easement in *Eaton v. Town of Wells,* 2000 ME 176, 760 A.2d 232. In *Eaton,* the Town of Wells was a party and was asserting a public easement. There was a century-long history of the Town maintaining, patrolling, and enforcing laws on the contested beach. *Eaton,* 2000 ME 176, ¶¶ 36–37, 760 A.2d at 245. There was also an extensive history of large public gatherings planned and conducted by the town and other groups unrelated to the landowners, and there was some indication of landowner dissatisfaction with some of the public uses. *Id.* ¶¶ 35–38, 760 A.2d at 245–46. This evidence was sufficient in *Eaton* to give the owners notice that a public easement was being acquired and that their rights were in jeopardy. *Id.* ¶¶ 34–39, 760 A.2d at 244–46. Similar evidence is lacking in this record.

[¶ 29] Likewise, in *Stickney,* the city was a party asserting the public easement. *Stickney,* 2001 ME 69, ¶ 11, 770 A.2d at 600. There was a more than forty-year history of city maintenance and public use, *id.* ¶ 3, and, most importantly, the court made an explicit finding of actual, not presumed, adversity—a disregard of the owner's claims entirely. *Id.* ¶ 22. *Stickney* provides no support for plaintiff's claims.

[¶ 30] When asked repeatedly at oral argument to identify evidence of adversity in the record, plaintiffs' counsel could point to only two inconclusive areas of testimony. First, plaintiffs' counsel identified the event in 1978, about which four witnesses testified, where a cable was placed across the road for a few days but then removed

on request and not replaced. Second, plaintiffs' counsel mentioned the reference in the testimony of Raymond Todd, the Baptist School's President, to the few incidents where individuals, who were misbehaving on the property, were asked to leave and did so. This later evidence is more consistent with the withdrawal of a conditional privilege than it is supportive of an adversity claim. The evidence regarding the cable across the road, removed on request, is not at all probative of the evident antagonistic purpose that is necessary to establish a public easement. Even if this evidence did demonstrate hostile intent, one or two incidents of hostility in a fifty-year history of public recreational use of a way is insufficient to support a public, prescriptive easement claim.

[¶ 31] What acts of dominion will result in creating title by adverse possession or an easement by prescription is a question of law. *Loavenbruck v. Rohrbach,* 2002 ME 73, ¶ 11, 795 A.2d 90, 93; *Striefel v. Charles–Keyt–Leaman P'ship,* 1999 ME 111, ¶ 7, 733 A.2d at 989. Because there was no evidence of hostility or adversity sufficient to establish a public, prescriptive easement, and because adversity cannot be presumed from more than twenty years of knowledge of the public recreational uses that were made of the Chapman lot, there is no evidence in the record to support the court's finding of adversity. That finding was clear error, requiring, as we did in *S.D. Warren Co.,* 1997 ME 161, ¶ 17, 697 A.2d at 1284, that we vacate the judgment and remand for an entry of a judgment for the defendant that plaintiffs' claim for a public, prescriptive easement has not been proven.

The entry is:

Judgment vacated. Remanded for entry of a judgment for the defendant.

CALKINS, J., with whom CLIFFORD and RUDMAN, JJ., join, dissenting.

[¶ 32] I respectfully dissent. I do so because the Court has failed to give the proper deference to the trial court's factual findings and because the Court has created a new and unwarranted presumption in the law of prescriptive easements.

[¶ 33] I agree with the Court that the elements required to prove a public prescriptive easement are continuous public use for twenty years under a claim of right adverse to the owner, with the owner's knowledge or acquiescence, or a use so open, notorious, visible, and uninterrupted that knowledge and acquiescence are presumed. *Jordan v. Shea,* 2002 ME 36, ¶¶ 22, 28 n. 7, 791 A.2d 116, 122, 124. These are the same elements required to prove a private prescriptive easement with the addition of proving public use. *Id.* ¶ 22, 791 A.2d at 122. Public use is shown by the use of the road by people who are inseparable from the public generally. *Id.* ¶ 28 n. 7, 791 A.2d at 124.

[¶ 34] The trial court found that the plaintiffs had established all the elements by "overwhelming evidence." Because there was no request for findings of fact we must assume that the court made all findings necessary to support its decision, and we will not set them aside unless clearly erroneous. *Glidden v. Belden,* 684 A.2d 1306, 1316 (Me.1996). Our review is deferential, and only if the evidence required a different result or if there are no facts in the record to support the trial court's judgment will we vacate. The only contested issue at trial was whether the plaintiffs proved a claim of right adverse to the Baptist School.

## I. PRESUMPTION OF ADVERSITY AND PRESUMPTION OF PERMISSION

[¶ 35] In order to prove the element of "claim of right adverse to the owner," the claimant asserting a prescriptive easement to a way must prove lack of permission from the owner and use of the way by the claimant as though the claimant owned the property himself. *S.D. Warren Co. v. Vernon,* 1997 ME 161, ¶ 11, 697 A.2d 1280, 1283; *Blanchard v. Moulton,* 63 Me. 434, 437 (1873). Proof of adverse use is facilitated by a presumption of adversity that arises when the other elements of a prescriptive easement are met:

> [T]he ordinary rule is that, where there has been an unmolested, open, and continuous use of a way for twenty years or more with the knowledge and acquiescence of the owner of the servient estate, the use will be presumed to have been adverse and under a claim of right, and sufficient to create a title by prescription, unless contradicted or explained.

*Burnham v. Burnham,* 130 Me. 409, 411, 156 A. 823, 824 (1931) (citing *Thompson v. Bowes,* 115 Me. 6, 9–10, 97 A. 1, 2 (1916)); *accord, e.g., Blackmer v. Williams,* 437 A.2d 858, 862 (Me.1981). When the presumption applies, the burden shifts to the landowner to prove by a preponderance of the evidence that the use was not adverse. M.R. Evid. 301(a). This means that in most cases permission becomes the defense to a prescriptive easement claim.[7]

---

**7.** The defense of permission must be distinguished from acquiescence, which is an element that must be shown (albeit sometimes by presumption) to establish a prescriptive easement. "Acquiescence implies passive assent or submission to the use, as distinguished from the granting of a license or permission given with the intention that the licensee's use may continue only as long as the owner continues to consent to it." *Stickney v. City of Saco,* 2001 ME 69, ¶ 23, 770 A.2d 592, 602 (internal quotation marks omitted). "Acqui-

*Glidden,* 684 A.2d at 1318 n. 21. The presumption of adversity applies whether the prescriptive easement is sought in favor of private individuals or the general public. *See Stickney v. City of Saco,* 2001 ME 69, ¶¶ 21–22, 770 A.2d 592, 602.

[¶ 36] The presumption of adversity, however, is not applicable to the use of "wild and uncultivated land," which under our existing law is presumed to be permissive. *Eaton v. Town of Wells,* 2000 ME 176, ¶ 32, 760 A.2d 232, 244; *S.D. Warren Co.,* 1997 ME 161, ¶ 16, 697 A.2d at 1284; *Town of Manchester v. Augusta Country Club,* 477 A.2d 1124, 1130 (Me.1984). The effect of the presumption of permission is to negate the presumption of adversity, so that the claimant of a prescriptive easement has the burden to prove that the use was adverse to the landowner. The Baptist School's entire argument on appeal is that its land is wild and uncultivated, that the burden to prove adversity was on the plaintiffs, and that as a matter of law they did not meet that burden.

## II.  THE TRIAL COURT'S APPLICATION OF THE PRESUMPTIONS

[¶ 37] In this case the trial court could have found that the plaintiffs were entitled to the presumption of adversity because all of the other elements of public prescriptive easement were met and because the evidence did not compel a finding that the land was wild and uncultivated. There was evidence that most of the Baptist School property within the Town of Chap-

man is wooded, but a portion of the land is cleared and was farmed within living memory. More importantly, the Baptist School's property within the Town of Mapleton is extensively cleared and has been built up with numerous buildings and structures to serve the summer camp programs that have been held there since the 1950s. Although the section of the Baptist Park Road in Mapleton is not at issue in this action, because it is uncontested that the public has a prescriptive easement on that section,[8] the trial court was free to consider the developed nature of the adjoining land in deciding whether the Chapman portion of the road was through wild and uncultivated land. The trial court was not required to view the Chapman property in isolation, and by considering both the Mapleton and Chapman portions of the property and the previous use of the Chapman portion, it could have found that the land is not wild and uncultivated. If it made such a finding, which the evidence supports, then the presumption of permission did not arise, the presumption of adversity was applicable, and the burden was on the Baptist School to prove that the public's use of the road was permissive. In the absence of a request for findings of fact, we must assume that the trial court made all findings necessary to support its decision, *Glidden,* 684 A.2d at 1316, and I would assume that the court found that the land was not wild and uncultivated and that the Baptist School failed to meet its burden to prove that the public use was permissive. Since neither finding is clear-

escence ... does not mean license or permission in the active sense. It means passive assent, or submission.... It is consent by silence." *Dartnell v. Bidwell,* 115 Me. 227, 230, 98 A. 743, 745 (1916).

8.  The Town of Mapleton has maintained the road within the Town for many years and the Baptist School does not dispute that it is a town way. Since the town manager testified

that town and county records do not show that the road was ever accepted, it must have become a town way by prescription. *See Town of Kittery v. MacKenzie,* 2001 ME 170, ¶ 9, 785 A.2d 1251, 1254 (stating that a town way may be created by laying out and acceptance, dedication and acceptance, or prescriptive use).

ly erroneous, I would affirm the judgment on that basis.

[¶ 38] I would reach the same result, however, even if the presumption of adversity does not apply. If the trial court had found that the land is wild and uncultivated, the *rebuttable* presumption of permission would arise, *Eaton*, 2000 ME 176, ¶ 32, 760 A.2d at 244, and the burden would be on the plaintiffs to prove that the public use of the road was adverse. Adversity is a finding of fact that we review only for clear error. *Taylor v. Nutter*, 687 A.2d 632, 634 (Me.1996). In my view the evidence amply supports a finding that the plaintiffs met their burden to prove adverse use.

[¶ 39] Numerous witnesses testified that they and their friends, neighbors, and relatives had used the road regularly throughout the prescriptive period without asking permission of the Baptist School. Several witnesses stated that they believed they had a right to use the road and one testified, "I just always used it. I used it like my backyard." Testimony that some of the users would have respected hypothetical "No Trespassing" signs had they been posted does not necessarily show that their use was not adverse. The court could have construed this testimony to mean simply that the witnesses would have complied with signs to avoid the possibility of a criminal trespass prosecution, *see* 17–A M.R.S.A. § 402(1)(C) (Supp.2001), and not that they believed the Baptist School had the right to exclude them. In any event, no such signs were posted, and the Baptist School made no effort (apart from an abortive attempt to block the road through the Mapleton lot in 1978) to prevent the public from using the road. Baptist School President Raymond Todd testified that the public use was with the organization's knowledge, that some people asked and

were given permission and that others did not ask.

[¶ 40] This evidence supports the trial court's finding that the public's use of the road was adverse, not permissive. Giving due deference to the fact-finder's superior ability to judge the credibility, weight, and significance of the evidence, *Eaton*, 2000 ME 176, ¶ 29, 760 A.2d at 243, I do not understand how the Court can conclude that there is no evidence of adverse use. The witness's statement, "I used it like my backyard," satisfies the classic definition of adverse use: "using it as though he owned the property himself ...." *S.D. Warren Co.*, 1997 ME 161, ¶ 11, 697 A.2d at 1283. The testimony of eleven different witnesses that the road was used without permission amply supports a finding of adversity. *See Eaton*, 2000 ME 176, ¶ 34, 760 A.2d at 244.

[¶ 41] The Court's view that there is no evidence of adverse use appears to stem from an overly restrictive definition of adversity. The Court seems to require a showing of "open and demonstrated hostile intent" by the plaintiffs in order to meet the adversity element. Our case law, however, does not require this showing. As stated above, adversity is proven by a showing of no permission to use the way and that use of the way by the claimant was as though he owned the property himself. *S.D. Warren Co.*, 1997 ME 161, ¶ 11, 697 A.2d at 1283; *see also Glidden*, 684 A.2d at 1318 n. 19. The Court also overlooks an important distinction: the claim of right required to establish a prescriptive easement is not the same as the claim of right required to establish adverse possession. *See Eaton*, 2000 ME 176, ¶ 40, 760 A.2d at 246. The adversity element of a prescriptive easement claim requires a disregard for the owner's right to exclude the user, but not an intent to oust the owner from possession. *Dartnell v. Bidwell*, 115

Me. 227, 230, 98 A. 743, 745 (1916); *cf. Striefel v. Charles–Keyt–Leaman P'ship*, 1999 ME 111, ¶ 14, 733 A.2d 984, 991–92 (stating that adverse possession requires "disseisin; that is, exclusive possession of another's land with intent to claim title"). Utilizing the correct definition of adversity, the trial court had sufficient evidence for a finding of adverse use.

## III. THE COURT'S NEW PRESUMPTION

[¶ 42] The Court today creates a new presumption to negate the presumption of adversity in prescriptive easement cases, holding that public recreational use of private land is presumed to be permissive. Because this new presumption is based on the use of the land instead of the character of the land, it departs significantly from our established case law.

[¶ 43] The Court justifies its new presumption by claiming that it is not new, but rooted in our precedents. This is incorrect. From Maine's first year as a state, we have recognized that the law of prescriptive easements developed in the improved, agricultural terrain of England could not be applied without change to the wild lands of Maine. *Bethum v. Turner*, 1 Me. 111, 115–16 (1820). We first held over one hundred and thirty years ago that use of "open and unenclosed" land is presumed permissive. *Mayberry v. Inhabitants of Standish*, 56 Me. 342, 353 (1868) (citing *Hewins v. Smith*, 52 Mass. (11 Met.) 241 (1846)). Early in the last century we explained that this presumption of permission was an exception to the generally applicable presumption of adversity.

Thompson v. Bowes, 115 Me. 6, 9–10, 97 A. 1, 1 (1916). In none of our early cases did we indicate that the presumption had anything to do with the use rather than the character of the land. We subsequently applied the presumption to land with a variety of uses, both recreational and non-recreational. *E.g., Littlefield v. Hubbard*, 124 Me. 299, 304, 128 A. 285, 288 (1925) (applying presumption of permission to use of uncultivated, unenclosed seashore property by hunters, commercial fishermen, people harvesting seaweed, and others).

[¶ 44] Our more recent cases discussing the presumption of permission have involved recreational use, *e.g., Augusta Country Club*, 477 A.2d at 1130,[9] but this is more a reflection of changing land use patterns than of a change in the law. Before today we have never held that the presumption was triggered by the use of the land rather than the wild and uncultivated nature of the land. On the contrary, in the most recent such case we stated: "When the land is wild and uncultivated, Maine applies the rule that open and continuous use for the requisite length of time raises a rebuttable presumption that the use was permissive." *Eaton*, 2000 ME 176, ¶ 32, 760 A.2d at 244.

[¶ 45] Further indication that a presumption of permission based on the use of the land is an unprecedented innovation comes from looking at authorities from outside Maine, which strongly support a presumption based on the character of the land. RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.16 cmt. g (2000) ("Evidence that the claimed ser-

9. Contrary to the Court's view, it is clear from the *Augusta Country Club* opinion that the right of way there was located on wild and uncultivated land owned by the country club and located near, but not on, its golf course. *See* 477 A.2d at 1126. In that opinion we were plainly applying the existing presump-

tion based on the character of the land, not inventing a new presumption based on the use, as is shown by our reliance there on our older cases. *Id.* at 1130 (citing *Piper v. Voorhees*, 130 Me. 305, 312, 155 A. 556, 560 (1931); *Littlefield*, 124 Me. at 304, 128 A. at 288; *Mayberry*, 56 Me. at 353).

vient estate was wild, unenclosed, vacant land overcomes the presumption of adverse use in many states, creating a presumption that the use was permissive."); 4 POWELL ON REAL PROPERTY § 34.10[2][c] (2001) (citing cases from sixteen states holding that presumption of adversity does not apply where land is "open, unenclosed, and unimproved"); 25 AM. JUR. 2D *Easements & Licenses* § 53 (1996) (citing cases from eleven states holding that there is presumption of permission and/or no presumption of adversity for use of "wild or unenclosed land"); J.J. Marticelli, Annotation, *Acquisition by user or prescription of right of way over uninclosed land,* 46 A.L.R.2D 1140, 1142–43 & n. 9 (1956) (citing cases from twenty-five states for "prevailing rule" that no presumption of adversity arises for use of unenclosed land). The Court's holding thus not only departs from our own precedents, but also puts us out of step with the law in other states.

[¶ 46] The justification offered for this change is that the Court desires to give property owners more protection than our existing law provides against the acquisition of easements by prescription. In one important respect, however, today's holding apparently makes it *easier* to acquire a prescriptive easement. Under our case law, any use of wild and uncultivated land has been presumed permissive. *See Eaton,* 2000 ME 176, ¶ 32, 760 A.2d at 244. By replacing the traditional presumption of permission with one that only applies to public recreational use, the Court gives those who use wild and uncultivated land for private or nonrecreational uses the benefit of the presumption of adversity. The effect of this change in the law is to shift the burden to landowners to prove that, for example, private use for commercial timber harvesting or public use for transportation purposes was permissive.

[¶ 47] Furthermore, we should not make such a significant change in well-established real estate law on the basis of our own notions of public policy. The Legislature has demonstrated its ability to alter the law of prescriptive easements for public policy reasons. *See* 14 M.R.S.A. § 812 (1980) (providing means of giving notice to prevent acquisition of prescriptive easement); *id.* § 814 (providing that interest in roads in unorganized territory cannot be acquired by prescription). I can discern no need for the Court to depart from existing law at this time. If reasons exist for changing the settled law in order to strengthen landowners' rights or encourage public recreation, we should leave such tasks to the Legislature.

[¶ 48] For these reasons, I dissent from the adoption of the new presumption. I would decide the case on the established prescriptive easement law. The evidence in this case was essentially undisputed that the public used the road through the Baptist School's property for recreational purposes continuously throughout the prescriptive period and that the Baptist School knew of this use and acquiesced in it. The evidence does not compel a finding that the Baptist School actively permitted the public's use. The trial court's findings are not clearly erroneous. I would affirm the judgment.